A01A0411. COCKRELL v. THE STATE.
(545 SE2d 600)

BLACKBURN, Chief Judge.

Following a jury trial, Victor Cockrell appeals his conviction for two counts of armed robbery, three counts of aggravated assault, and two counts of burglary, alleging that the evidence was insufficient to support the convictions. Cockrell also alleges that the indictment contained a fatal variance.

1. On appeal from a criminal conviction,

> the evidence must be viewed in the light most favorable to support the verdict, and [Cockrell] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Punctuation omitted.) *Lester v. State;*[1] see *Jackson v. Virginia.*[2]

So viewing the evidence, on February 28, 1998, a home invasion took place at 1368 North Cliff Valley Way. The home was occupied by Carmen Juarez, Andres Montezuma, Alexander Montezuma, Jose Mexquitic, and Rosalito Mexquitic. The occupants had been playing cards that evening when someone knocked at the door and stated that it was the police. The occupants opened the door and, upon realizing that it was not the police, tried closing the door. Three black men and two black women pushed the door in and forced themselves into the apartment. Two of the men were carrying a gun, and the other was carrying a baseball bat. One of them stated, "[s]tay still, just give us some money." The men then threw some of the occupants, including Juarez, to the floor and pistol whipped Jose Mexquitic. The men took all of the money that was on the card table. After Andres Montezuma and Rosalito Mexquitic attacked one of the men who

---

[1] *Lester v. State,* 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).
[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

were holding the guns, the men then left through the back door. The occupants of the house captured one of the women who had also entered the house. The black men then reentered the home through the front door and broke the glass in the front door with a baseball bat. Rosalito Mexquitic was shot at some point during the scuffle, and Andres Montezuma was cut on the cheek with a gun.

Esteban Perla, who lived in the apartment above, testified that he heard noises, followed by gunshots. He went to his window and saw three black men, one holding a gun, one holding a baseball bat, and two black women, one of whom was being held by the occupants of the apartment. Perla noticed a cream-colored Cadillac at the scene. Perla later identified Cockrell in a photographic lineup as one of the perpetrators, indicating that he was 95 percent positive about his identification.

The DeKalb County police were called to investigate the home invasion. A witness reported to the police that he observed a yellow or cream-colored Cadillac parked near the mailboxes in the apartment complex that evening. Outside the vehicle were three black males and two black females. The witness later saw the five people congregating near the home invaded. Shortly thereafter, the witness heard gunshots and observed two black males running out of the apartment, one with a handgun, the other with a baseball bat. The witness made a tentative partial identification of Cockrell in a photographic lineup as one of the perpetrators.

The following day, Cockrell and co-defendant Dwayne Jackson told Michael Lupoe that they had committed a robbery the night before. They told Lupoe that the Mexicans they were robbing captured Vaneesah Bahar in the apartment and that Cockrell "shot his way back in" to try to get her out, but was unsuccessful. Lupoe testified that the day before the incident, Cockrell and co-defendants Jackson, Roxanne Brown, Vaneesah Bahar, and Vashawn Bahar told him that they were going to rob some Mexicans and asked him to join them. Lupoe declined. Lupoe recalled that they were riding in a Cadillac.

(a) We find that the evidence was sufficient to support the convictions for armed robbery, which were against Juarez and Jose Mexquitic. The essential elements of armed robbery are the intentional taking of the personal property belonging to another person from that person by use of an offensive weapon. OCGA § 16-8-41 (a).

Juarez testified that the home invaders, one of whom was later identified as Cockrell, "came in with a pistol in their hand [and told them], '[s]tay still, just give us some money.'" The gunmen then pushed her and the others on the floor and pointed a gun at Jose Mexquitic. They then took money from the card table.

Cockrell argues that the evidence regarding Jose Mexquitic was

insufficient because Jose did not testify at trial. We previously stated, however, in *Collier v. State*,[3] a case involving armed robbery and simple battery, that

> [a]n alleged victim's testimony is not required to convict (in homicide cases, for example, such testimony is never available), if there are other witnesses, as there were in this case, who can testify that defendant committed acts which establish the elements of the offense.

We find that Juarez's testimony establishes that the evidence was sufficient for the armed robbery count involving Jose Mexquitic.

(b) We find that the evidence was sufficient to support the convictions for aggravated assault, which were against Juarez, Jose Mexquitic, and Rosalito Mexquitic.

The essential elements of aggravated assault are attempting to commit a violent injury or committing an act which places another in reasonable apprehension of immediately receiving a violent injury with intent to murder, rape, or rob. OCGA §§ 16-5-20; 16-5-21.

Rosalito's testimony that he was hit with a bat and shot at with a gun during the robbery established the elements of aggravated assault with respect to him. Likewise, Juarez's testimony established the elements with respect to her and Jose Mexquitic. Cockrell argues that the evidence was insufficient with respect to Jose Mexquitic because no one else but Jose could testify about whether he had a reasonable apprehension of immediately receiving a violent injury. We disagree.

The state of mind of a victim may be proved by indirect or circumstantial evidence. *Williams v. State*.[4] We find that Juarez's testimony that one of the perpetrators held a gun to Jose's head, considered against the backdrop of the ongoing home invasion, establishes this element.

(c) The remaining convictions are the two merged convictions for burglary, which were based on armed robbery and aggravated assault as the underlying felonies. The pertinent elements of burglary are entrance into the dwelling house of another, without authority, and with the intent to commit a felony or theft therein. OCGA § 16-7-1 (a). Already having found the evidence sufficient for the underlying felonies, and considering the facts already discussed, we find that there is ample evidence to support the burglary convictions.

2. Juarez made a statement to police regarding the incident that

---

[3] *Collier v. State*, 157 Ga. App. 109, 110 (2) (276 SE2d 262) (1981).
[4] *Williams v. State*, 208 Ga. App. 12, 13 (430 SE2d 157) (1993).

took place on February 28, 1998, at 1368 North Cliff Valley Way. The name she gave the police at the time was Carmelo Montezuma. When asked at trial to explain why she gave a different name, Juarez stated, "I was a little drunk that day." Cockrell argues that a fatal variance exists between the indictment, which listed Carmelo Montezuma as one of the victims, and the evidence at trial, which was that the victim in question was actually named Carmen Juarez.

The determination of whether a variance in the indictment and the proof is fatal depends on whether the variance affects the substantial rights of the accused. *Denson v. State.*[5] Our Supreme Court in *DePalma v. State,*[6] departed from overly technical interpretations with respect to variances. Since then, this Court has

> emphasized that it is the underlying reasons for the [variance] rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense.

*Partridge v. State.*[7]
In this regard,

> a variance [that] exists between the victim's name as alleged in the indictment and as proven at trial . . . is not fatal if the two names in fact refer to the same individual, such as where a mere misnomer is involved or where the variance is attributable to the use of a nickname or alias by the victim.

*Harrison v. State.*[8] Here, Juarez's testimony establishes that the variance was attributable to her use of an alias. We therefore do not find that this variance was fatal.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 9, 2001 —
RECONSIDERATION DENIED MARCH 1, 2001.

*Elliott A. Shoenthal*, for appellant.

---

[5] *Denson v. State*, 212 Ga. App. 883, 884 (2) (443 SE2d 300) (1994).
[6] *DePalma v. State*, 225 Ga. 465, 469-470 (169 SE2d 801) (1969).
[7] *Partridge v. State*, 187 Ga. App. 325, 327 (3) (370 SE2d 173) (1988).
[8] *Harrison v. State*, 192 Ga. App. 690, 691 (1) (385 SE2d 774) (1989).

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.