A02A1079. HASSEL v. THE STATE.
(570 SE2d 685)

BARNES, Judge.

A jury convicted Rolland W. Hassel of criminal attempt to commit armed robbery and aggravated assault.[1] He appeals, contending that the trial court erred by admitting testimony about other armed robberies into evidence and that the evidence adduced at trial was insufficient to sustain his conviction of aggravated assault. We affirm.

1. We review the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

Viewed in the light most favorable to the verdict, the evidence established that Hassel, Christopher Arthur, and Christopher Gills planned to commit an armed robbery. Hassel drove the two men to a liquor store and parked. Hassel then gave Arthur a .38 caliber revolver, which Hassel had loaded earlier in the day. The men then

---

[1] Hassel was also indicted for malice murder and felony murder, but a directed verdict of acquittal was granted on the malice murder count and a mistrial was declared on the felony murder after the jury could not reach a verdict.

walked up to the liquor store, and Hassel scouted inside to see if anyone was there. He told Arthur and Gills that two men were in the store, and all three men donned masks.

Hassel expressed reservations about continuing with the robbery, because he had a "bad feeling that something wasn't right and that he didn't want to go into the store." After the other two said they were going to rob the store anyway, he followed until he was about five to fifteen feet from the door.

Acting according to their original plan, Hassel stayed near the outside of the door as a lookout while Arthur, armed with the .38 caliber revolver Hassel gave him, and Gills entered the liquor store to commit the robbery while Hassel stood at the doorway with his mask on. Arthur and Gills ordered the men to "get on the ground." One did so, but the other man, who was standing at the cash register, pulled a gun from beneath the counter and began firing. Arthur fired back striking the man and causing a fatal wound.[2] The three men ran out and jumped in the car, and Hassel drove them away.

2. Hassel contends the trial court erred by admitting evidence of other armed robberies because he was not convicted of them and also because several distinct differences existed between those armed robberies and the one for which he was being tried. The trial court held, however, that the evidence was admissible because the State was not seeking to introduce the evidence of these independent offenses based on an improper reason, but rather for the purpose of showing method of operation and identity.

The evidence showed that several young men, including Hassel, Christopher Arthur, and Gills, as well as their friends, Shawn Arthur, Scott, and Neely, were all a part of a "robbing crew." These individuals were familiar with each other because they all knew each other from the apartments in which they lived. Hassel, Christopher Arthur, and Gills were the three who took part in the robbery of the liquor store for which Hassel has been convicted and which is the subject of this appeal.

A clerk at a CVS Pharmacy testified that one night around midnight as she was stocking shelves, she turned around and saw a man wearing a ski mask pointing a gun at her. He told her to go up front, but she was too scared to move. The robber went back to the pharmacy and got the pharmacist. He forced the clerk and the pharmacist, at gunpoint, upstairs into the manager's office. The store manager and a second masked robber were already there. This second robber was taking money out of the safe. A gun was on the floor

---

[2] Arthur pled guilty to felony murder and received a life sentence.

beside him. The two robbers put the money in their pockets and left the store. The clerk, however, was unable to identify either robber.

At trial, Christopher Arthur testified that he, Hassel, and Neely committed an armed robbery of this CVS Pharmacy. He testified that he, Hassel, and Neely planned the robbery. He also testified that he acted as a lookout, while Hassel and Neely went inside the store. Arthur then stated that Neely had a rifle and both were masked. They came out of the store about five minutes after they went in with some money that they had obtained from the robbery. Arthur also testified that Hassel told him that Neely went to the office part of the CVS to get all the money while he went back to see if any customers were there.

Neely testified that he had been charged in a number of robberies in January and February 2000. Some of the charges arose from the armed robbery of a Chinese restaurant, some from the CVS robbery, and some from the robbery of a Vietnamese grocery store. Neely pled guilty to the armed robbery of the CVS Pharmacy. He testified that Arthur drove him and Hassel to the pharmacy in his car, and that he and Hassel, both armed with guns and wearing masks, robbed the store. Neely obtained the money, which was split three ways between himself, Hassel, and Arthur.

Neely also testified that he, Hassel, and Shawn Arthur committed an armed robbery of a Vietnamese grocery store in Clarkston. Neely testified that the three of them planned the robbery, and that Arthur's girlfriend drove them to the scene. He and Hassel entered the store, Neely with a gun and Hassel without one. The two robbed the store, left, and then divided the money three ways.

The owner of a Vietnamese grocery store in Clarkston testified that two robbers came into his store wearing masks and gloves. One had a small square gun. They ordered him to open his cash drawer. At first he refused, but when they showed him the gun, he opened the cash drawer. The gunman pointed the gun at his face while the other man removed money from the register and took a cigarette lighter from the case behind the owner. When a customer entered the store, the gunman put the gun to her head and took the money in her purse.

Concluding that the evidence was relevant to show the method of operation of the robberies and Hassel's identity, the trial court admitted the evidence of the two similar transactions. The court also found "sufficient similarities in that the two other incidents were relatively close in time, as well as geographic location. They involved multiple individuals. They all involved the use of a handgun or firearm, as the weapon, and involved commercial establishments."

It is well settled that there need not be criminal charges or conviction relating to a similar offense for it to be admissible. *Johnson v.*

*State*, 193 Ga. App. 618 (388 SE2d 866) (1989). Consequently, Hassel's argument based on the lack of conviction is without merit.

Further, his argument that the various robberies were not similar enough is also without merit. "The test . . . is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character." (Citation and punctuation omitted.) *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989). Pretermitting whether the similarities between the robberies were enough to show that the crime on trial bore the defendant's criminal signature, the trial court also allowed the similar transaction evidence in to show the method of operation of the robberies. In particular, the evidence of these other robberies tended to show that it was not unusual for one of the robbers to remain outside the store as a lookout. Therefore, while the crimes differed in some respects, the trial court did not err in concluding that the similarities were sufficient to tend to prove the method of operation Hassel and his accomplices used to commit armed robberies.

3. Hassel further contends the evidence presented at trial is insufficient to sustain his conviction because he withdrew from the criminal enterprise before it happened and did not personally assault the victim. Hassel need not actually assault a victim, however, to be guilty of aggravated assault. The State need only show that Hassel intentionally aided or abetted in the commission of the assault, or intentionally advised, encouraged, hired, counseled, or procured another to commit the crime for the jury to find him guilty of aggravated assault as a party to the crime. See OCGA § 16-2-20. The evidence here showed Hassel planned the robbery, furnished the gun, and acted as a lookout. Therefore, the evidence was sufficient to sustain Hassel's conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 30, 2002.

*Robert J. Storms*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Thomas S. Clegg, Assistant District Attorneys*, for appellee.