## A04A0683. MULLINS v. THE STATE.
(599 SE2d 340)

Ruffin, Presiding Judge.

A jury found Byron Mullins guilty of armed robbery, hijacking a motor vehicle, and theft by taking. Mullins appeals, challenging the sufficiency of the evidence and alleging that he received ineffective assistance of counsel. He also argues that the trial court erroneously admitted evidence and committed a charging error. For reasons that follow, we affirm.

1. In reviewing a defendant's challenge to the sufficiency of the evidence, we construe the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty of the crimes charged beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that, on November 25, 2000, off-duty police officer Herman Green, Colin Lampkin, and two females went to a restaurant in a 1996 Range Rover owned by an individual living in New York, but primarily used by Lampkin. One of the females drove, and when they arrived at the restaurant, she had difficulty with the car alarm. The female handed the keys to Green, who reset the alarm. As Green turned from the car, a masked man exited a nearby white Chevrolet Caprice, placed a gun to Green's head, and said, "give it up." Green gave the gunman his wallet, his credit card pouch, and the Range Rover keys. The gunman then pointed the gun at Lampkin's head and took his sunglasses. At some point, the gunman also took several cell phones belonging to Lampkin.

After robbing Green and Lampkin, the gunman drove away in the Range Rover, which had an expensive stereo system and contained Green's service revolver. The white Caprice also left the scene.

---

[1] See *Cockrell v. State*, 248 Ga. App. 359 (1) (545 SE2d 600) (2001).
[2] See id.

Before both cars left, however, Green heard someone in the Caprice yell to the gunman, "yo, B, let's go."

Green reported the incident to the police and described the gunman as approximately 6'1" or 6'2" tall. The following day, Green recalled that the gunman, who had been standing at the low end of a grade in the parking lot, actually was much taller, and he reported this information to the police. At trial, Green testified that Mullins, who stood 6'8" tall at the time of the robbery and had grown an inch by the trial date, was approximately the same height as the gunman.

While investigating the incident, Investigator Don Haff discovered that a white Chevrolet Caprice had been reported stolen in a car-jacking shortly before the Range Rover theft. Haff reviewed that case file and discovered that the victim had identified Mullins as the car-jacker. Haff also noted that Mullins was the same height as the person described by Green. Furthermore, cell phone records from one of the phones taken in the Range Rover robbery showed that, after the robbery, several calls were made from that phone to Mullins' home.

The police searched Mullins' house pursuant to a warrant and discovered tire rims and audio equipment, including a radio and a CD changer. Based on a blemish visible on one of the rims found in Mullins' house, Green testified that the rims had been taken from the Range Rover. He also recognized the radio and CD changer, which were the same make and model as the equipment from the Range Rover. In addition, the CD changer contained a CD that was playing in the Range Rover before the car-jacking and had not yet been commercially released. The police subsequently found the Range Rover, which had been "stripped" of its stereo equipment, tires, and rims.

The State also presented testimony regarding the Chevrolet Caprice hijacking as similar transaction evidence. Allan Smith testified that, on November 21, 2000, Mullins' car hit the passenger side of his white Caprice as both cars left a high school parking lot. Smith looked at Mullins, who appeared to reach under the driver's seat. Fearful that Mullins had a gun, Smith continued to drive until forced to stop for a crossing train.

Mullins pulled behind Smith, approached Smith's car with a gun, and ordered Smith from the vehicle. Mullins told Smith to give him everything in his pockets. When Smith stated that he had nothing in his pockets, Mullins responded: "don't worry about it because your car is mine now." Mullins then jumped into Smith's car and drove away. Smith recovered his vehicle six days later, on November 27, 2000.

Mullins testified and denied any involvement in the Range Rover car-jacking and robbery. He asserted that one of his friends asked him to keep the rims seized from his house while the friend's car was in the

shop. The friend also gave Mullins the stereo equipment as payment for "holding the rims." Mullins further denied taking Smith's car or pointing a gun at Smith. An individual who was with Mullins on November 21, 2000, similarly testified that Mullins did not take Smith's car or threaten Smith with a gun. Finally, Mullins' mother testified that Mullins was at home on November 25, 2000, when the Range Rover car-jacking occurred.

(a) *Armed Robbery.* "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon."[3] In the indictment, the State alleged that Mullins committed this offense by using a handgun to take a wallet and sunglasses from Green and Lampkin.

The evidence shows that a masked individual took Green's wallet and Lampkin's sunglasses while pointing a gun at their heads. We recognize that the evidence connecting Mullins to the robbery was circumstantial. Nevertheless, given Green's testimony about the size of the gunman, the evidence found in Mullins' house, the cell phone calls to Mullins' house, an accomplice's reference to the gunman as "B," Smith's testimony that Mullins stole his white Chevrolet Caprice a few days before the robbery, and the use of a white Caprice in the robbery, the jury was authorized to conclude that Mullins was the gunman.[4]

On appeal, Mullins argues that the State cannot prove that he took the sunglasses from Lampkin by force, which is a necessary element of robbery,[5] because Lampkin did not testify at trial. But, "an alleged victim's testimony is not required to convict . . . if there are other witnesses . . . who can testify that [the] defendant committed acts which establish the elements of the offense."[6] Green's testimony that the gunman pointed a gun at Lampkin's head, then removed Lampkin's sunglasses, permitted the jury to conclude that Mullins took the sunglasses by force.[7]

(b) *Hijacking a motor vehicle.* Under OCGA § 16-5-44.1 (b), "[a] person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so." The indictment alleged that Mullins committed this offense by taking the Range Rover at gunpoint from Lampkin. Once again, Mullins argues that

---

[3] OCGA § 16-8-41 (a).

[4] See *Webb v. State*, 251 Ga. App. 414, 416 (2) (554 SE2d 563) (2001).

[5] See *State v. Epps*, 267 Ga. 175, 176-177 (476 SE2d 579) (1996).

[6] *Cockrell*, supra at 361 (1) (a).

[7] See id. at 360-361.

Lampkin's failure to testify renders the evidence of force insufficient. As discussed above, however, the State need not present the victim's testimony to establish force.[8]

The evidence shows that the Range Rover was registered to a New York owner, but that Lampkin primarily used it and Green referred to it as Lampkin's vehicle. Furthermore, although Green had the keys at the time of the car-jacking, Lampkin was standing by the Range Rover when Mullins pointed the gun at both men, took the keys, and drove away. Under these circumstances, the jury was authorized to find that Mullins took Lampkin's Range Rover from Lampkin's presence using force and intimidation.[9]

(c) *Theft by Taking.* The State also charged Mullins with theft by taking Green's handgun, which was in the Range Rover at the time of the robbery and was never recovered. Based on the evidence, the jury was authorized to conclude that Mullins took the Range Rover and its contents, including the handgun, with the intent to deprive the owners of the property, in violation of OCGA § 16-8-2. Although Mullins now argues with respect to all three charges that the State's witnesses lacked credibility, particularly given his alibi testimony, the jury, not this Court, weighs the evidence and determines witness credibility.[10]

2. Mullins also claims that the trial court erred in admitting the similar transaction evidence involving Smith. According to Mullins, the Smith transaction was not sufficiently similar to the Range Rover robbery to permit its introduction into evidence. He further claims that the State failed to prove that he committed the transaction. We disagree.

First, Mullins failed to preserve this enumeration of error for appeal. Although he challenged the introduction of this evidence at a pretrial hearing, he did not object when the evidence was admitted at trial. "The rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it."[11]

Moreover, even if Mullins had preserved this argument for appeal, we would find no error. The test for determining the admissibility of similar transaction evidence "is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial

---

[8] See id. at 361.

[9] See OCGA § 16-5-44.1 (b).

[10] See *Cockrell*, supra at 359.

[11] (Punctuation omitted.) *Felder v. State*, 260 Ga. App. 27, 29 (3) (579 SE2d 28) (2003).

because he is a man of criminal character."[12] The decision to admit this evidence falls within the trial court's discretion and will not be reversed absent an abuse of discretion.[13]

The State presented evidence that Mullins hijacked Smith's white Caprice by holding a gun to Smith's head just four days before the November 25, 2000 Range Rover robbery and car-jacking. The evidence further shows that a white Caprice was used in the Range Rover incident and that Smith did not recover his car until November 27, 2000.

Given that both incidents constituted car-jackings committed with a gun pointed at the victim or victims, occurred within four days of each other, and involved a white Chevrolet Caprice, as well as the fact that Smith positively identified Mullins as the November 21, 2000 car-jacker, the trial court did not abuse its discretion in admitting the similar transaction evidence to show bent of mind, course of conduct, and identity.[14] Although Mullins now argues that the State failed to prove he committed the November 21, 2000 car-jacking, Smith's testimony was sufficient to meet the elements of OCGA § 16-5-44.1 (b). The weight given to this evidence, as well as to the testimony disputing Smith's account, "was within the sole province of the jury."[15]

3. Next, Mullins argues that the trial court erred in admitting into evidence five CDs retrieved from inside the CD changer seized from his home. During trial, the State asked permission to force open the CD changer and remove the CDs that it suspected were stuck inside. Mullins objected, arguing that he had not been given an opportunity to inspect the CDs prior to trial. The prosecutor responded that, when defense counsel examined the evidence, including the CD changer, before trial, the prosecutor informed counsel that the State was "trying to get [the CDs] out for the purpose of using them at trial." Defense counsel did not deny that the prosecutor made this statement, but he did not recall the statement.

The State pried open the CD changer and found five CDs inside. The defense again objected to their admission into evidence. The trial court overruled the objection, concluding that the CDs were part of the CD changer exhibit, which was shown to the defense prior to trial.

We find no error. Under OCGA § 17-16-4 (a) (3),

---

[12] (Punctuation omitted.) *Hassel v. State*, 257 Ga. App. 228, 231 (2) (570 SE2d 685) (2002).

[13] See *Freeman v. State*, 257 Ga. App. 127, 128 (570 SE2d 414) (2002).

[14] See id. at 128-129; *Hassel*, supra at 230-231.

[15] (Punctuation omitted.) *Anderson v. State*, 238 Ga. App. 866, 870 (1) (519 SE2d 463) (1999).

[t]he prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant . . . to inspect . . . tangible objects . . . which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial.

Upon a showing of prejudice and bad faith, failure to comply with this discovery requirement may result in the exclusion of such evidence.[16] The trial court, however, is vested with discretion in formulating remedies for discovery violations, and we will not reverse the trial court's decision absent an abuse of discretion.[17]

The trial court concluded that the State timely disclosed the CD changer, which contained the CDs, and the prosecutor asserted that he told defense counsel prior to trial that the CDs might be inside. Under these circumstances, the trial court did not err in refusing to find a discovery violation. Furthermore, even if a discovery violation occurred, Mullins must show both bad faith by the prosecutor and prejudice before the evidence may be excluded under OCGA § 17-16-6. Given the prosecutor's undisputed statement that he informed defense counsel that the State wanted to remove any CDs that might be in the CD changer for use at trial, we fail to see how Mullins can show bad faith. Finally, "a defendant is obliged to request a continuance to cure any prejudice which may have resulted from the State's failure to comply with the requirements of the reciprocal discovery act."[18] By failing to seek a continuance, Mullins waived this allegation of error on appeal.[19]

4. Mullins also argues that the trial court erred in failing to give his requested jury instruction on the "lesser offense" of theft by receiving stolen property. As found by the trial court, however, theft by receiving stolen property is not a lesser included offense of armed robbery, theft by taking, or hijacking a motor vehicle.[20]

Mullins claims on appeal that, given the particular facts of this case, theft by receiving should be viewed as a lesser offense of these charges. But he has made no effort to show — and we cannot find —

---

[16] See OCGA § 17-16-6.

[17] See *Romero v. State*, 247 Ga. App. 724, 725-726 (545 SE2d 103) (2001).

[18] *Hayes v. State*, 249 Ga. App. 857, 863 (4) (549 SE2d 813) (2001).

[19] See id.

[20] See *Frazier v. State*, 257 Ga. 690, 699 (17) (362 SE2d 351) (1987) (armed robbery); *Middlebrooks v. State*, 241 Ga. App. 193, 195 (4) (526 SE2d 406) (1999) (hijacking a motor vehicle); *Sosbee v. State*, 155 Ga. App. 196, 197 (270 SE2d 367) (1980) (theft by taking).

that "the facts alleged in the indictment and the evidence presented at trial to establish the charged offense are sufficient to establish the lesser offense as well."[21] Accordingly, this claim of error lacks merit.

5. Citing prior counsel's failure to move to suppress the items seized from his home, Mullins contends that he received ineffective assistance of counsel. Following trial, the trial court appointed Mullins new counsel for post-conviction matters, including appeal. Mullins' newly appointed counsel moved for a new trial, but did not raise an ineffective assistance claim. Thus, this claim has been waived.[22] Furthermore, although Mullins, who is now represented by new appellate counsel, apparently contends that his original appellate counsel was deficient in failing to raise an ineffective assistance claim below, "[a] defendant cannot resuscitate claims of ineffectiveness that are procedurally barred simply by bootstrapping them to a claim of ineffectiveness of appellate counsel."[23] Mullins' ineffectiveness claim must be addressed in a habeas corpus proceeding.[24]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED MAY 13, 2004 — ▇▇▇▇▇▇▇▇

*Manchel, Wiggins & Kaye, Howard J. Manchel,* for appellant.
*Paul L. Howard, Jr., District Attorney, Anne E. Green, Assistant District Attorney,* for appellee.

---

[21] (Punctuation and emphasis omitted.) *Damare v. State,* 257 Ga. App. 508, 511 (2) (571 SE2d 507) (2002). See also OCGA § 16-8-7 (a) ("A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.").

[22] See *Upshaw v. State,* 257 Ga. App. 199, 201-202 (4) (570 SE2d 640) (2002).

[23] Id. at 202.

[24] See *Brackins v. State,* 249 Ga. App. 788, 790 (3) (549 SE2d 775) (2001).