## 20942. COKER *v.* THE STATE.

DECIDED DECEMBER 18, 1930.

*Clarence E. Adams,* for plaintiff in error.
*R. Howard Gordon, solicitor,* contra.

LUKE, J. Having been convicted of possessing whisky, Clarence Coker filed his motion for a new trial based solely upon the usual general grounds. W. L. David, a policeman, testified: that on the date set out in the accusation he and Ed McGee and J. L. Fortson, two county policemen, searched the defendant's house and found therein 75 or 80 one-gallon tin cans and some fruit-jars; that they went down the road and found the defendant and Thomas Bonner picking cotton in a field; that they went towards Bonner and he ran away carrying with him a cotton-sack "that looked like it had something in it;" that when they returned after a fruit-less chase after Bonner, the defendant was "moving off pretty fast down the edge of the field on the other side," and that the witness did not see the defendant again until he came to court; that after the defendant and Bonner had left, the searching party found "five gallons of whisky in one-gallon tin cans and a ten-gallon keg;" that "there were two sets of tracks going from the road to the whisky, and from there to where they were picking cotton," and that "they looked to be the same tracks made by Coker and Bonner

picking cotton;" that witness did not know "they were Coker's tracks;" that witness "understood this was Coker's cotton patch," and that he had seen him working there; that witness did not know that the whisky found was defendant's whisky, or that he ever had possession of it; that no whisky was found in defendant's house; that witness did not know whether defendant and Bonner were picking cotton in defendant's field—that it could have been Bonner's field; that defendant lived about a mile below Comer; that "you turn off the main highway to the right and cross the railroad, and there is a house on the left of the road" where Emma Morse lived; that defendant lived on the right of the road further down; that "still further down the road" and on the left side of it was Will Self's house; that past Self's house was a road which turned off through the field to the right; that on the left of this road defendant and Bonner were picking cotton; that the searching party found the whisky "on the other side of the road through the field from where they were picking cotton;" and that defendant's house and Self's house were about the same distance from the whisky that was found.

T. L. Henley, sheriff, testified: that he failed to locate the defendant, though he had kept a lookout for him, until the sheriff of Jackson county arrested him in Athens, Ga. We quote the remainder of the testimony of this witness: "Coker told me they were picking cotton on Bonner's side; their crops were joining; and the liquor was found on Coker's side near a rock pile."

The defendant, in his statement at the trial, said: that he was picking cotton for his brother-in-law, Thomas Bonner, in the latter's field when the officers came up; that the officers passed near defendant, and that Bonner walked ahead of the officers until he got to the edge of the swamp, and then ran; that he, defendant, picked his row out and went across to his field "on the other side" to get a basket of cotton to carry home; that he did not run, as "they were not after him;" that he carried the cotton home and ate his dinner, and that as he had finished picking his crop and Bonner was gone, and he had no work to do and had already gotten a job at a saw-mill in Jackson county, he "moved his family up there" and had been there ever since; that he had been hired by Bonner to pick cotton, and that his, defendant's, field was back near his house.

W. L. David, recalled for the State, testified that the defendant

"stepped off pretty lively when he got down near the edge of the field—was running;" that the searching party were not very long in finding the whisky; and that they went by the defendant's house and looked for him, but did not find him.

While the evidence raises a suspicion against the defendant, we do not think that it meets the requirement of the Penal Code (1910), § 1010, that it "exclude every other reasonable hypothesis save that of the guilt of the accused."

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*