58728, 58729. O'QUINN v. THE STATE (two cases).

SOGNIER, Judge.
George and David O'Quinn were convicted in a common trial with James L. Hutcheson, Jr., of burglary and on appeal they enumerate four errors. First, that the evidence was insufficient as a matter of law to support the verdict; second, that the trial court erred in allowing, over objection, the testimony of Sheriff Wainwright regarding his observations of the conduct and actions of a bloodhound; third, that the trial court erred in admitting, over objection, prosecution Exhibit 3, a certificate of discharge of George O'Quinn, issued by the Florida Division of Corrections; and fourth, that the trial court erred by failing to instruct the jury completely on the state's failure to prove the essential element of in-

tent.

We note at the outset that James Hutcheson and David O'Quinn switched identities, and this was not discovered until after the trial. For the purposes of this opinion, we will refer to them by their true identity.

The evidence indicates that Tommy Jacobs lived next door to Jim and Dale Halligan, victims of a burglary. On February 7, 1979 Jacobs was sitting in his car at the end of a lane leading from his house when he saw some movement by the Halligan's house. He drove toward Halligan's and, on arrival, he saw James Hutcheson squatting down; as Jacobs stopped, Hutcheson jumped up and ran toward a window. Jacobs saw a car and wrote down the tag number. He noticed car tracks in Halligan's yard; as their door was open he went in and called the sheriff's office. On the sheriff's arrival, they checked the house and Jacobs (Mrs. Halligan's brother) noticed the television missing; however, it was discovered in the yard. The sheriff and Jacobs found tracks about 70 or 80 yards from the Halligan's house, and concluded there were three people making tracks. One set of tracks was leading from the car to the house and back to the car. About this time, Hutcheson returned to the car and was arrested. Eventually, several law enforcement officials became involved in following tracks and some bloodhounds were brought in to follow tracks starting from the Halligan's house. Mr. Knowlton, from the State Fish and Game Department, saw George O'Quinn by a railroad trestle and apprehended him. Knowlton then looked under the trestle, saw David O'Quinn, and apprehended him. When the other law enforcement officials arrived, the O'Quinns had been placed in the back of a patrol car. The bloodhounds were brought to the scene and one of them was taken to the patrol car. When the car door was opened the dog sniffed at George O'Quinn.

When Mr. Halligan returned home he noticed nothing unusual about his house (the television set had been put back inside), but later noticed a chainsaw and battery charger missing from his back porch. Three days later he found them under some bushes about 10 or 15 feet from where the car, belonging to James Hutcheson, had been parked. All three defendants testified and denied

entering the Halligan's house or taking anything from their house. Each of them testified that Hutcheson had lost a dog in the area about 10 days previously and the three of them returned to hunt for the dog. Based on this evidence, all three men were found guilty of burglary. Hutcheson's conviction was set aside by the trial court when it was learned after trial he was a juvenile. Both O'Quinns appealed, and we reverse.

1. Code Ann. § 26-1601 provides, in pertinent part: "A person commits burglary when, without authority and with the intent to commit a . . . theft therein, he enters the dwelling house of another. . ." Thus, in the present case, it was necessary to prove two basic facts to establish that a burglary was committed. First, an unauthorized entry and secondly, an intent to commit a theft. In our opinion, neither of these elements were established by the evidence.

To determine what evidence was properly admitted for the jury's consideration, we must look first to the testimony of the sheriff relating to the action of the bloodhounds. The landmark case in Georgia relating to testimony as to the way a certain dog acted is *Aiken v. State,* 16 Ga. App. 848 (86 SE 1076) (1913). In that case, we held at p. 852: "Before testimony as to the way a certain dog acted can be of any rightful use, it should appear that the person testifying is reliable, that the dog whose actions are to be described was able to scent a track under the given circumstances, and that the dog did follow such scent or track to the location of the defendant. When all this is established it is not proof of guilt, but merely some evidence that the party tracked had been at the place where the crime was committed; . . . Of course, the weight to be attached to the testimony is for the jury but, its competency being a question for the court, no evidence as to the conduct of the dog should be submitted by the court to the jury without a preliminary investigation on the part of the court (and preferably in the absence of the jury) as to its admissibility. In Pedigo v. Commonwealth . . . [103 Ky. 41 (116 SW 344, 42 L. R. A. 432)] it was held that 'In order to make such testimony competent, even when it is shown that the dog is of pure blood and of a stock characterized by acuteness of scent

and power of discrimination, it must also be established that the dog is possessed of these qualities, and has been trained or tested in their exercise in the tracking of human beings, *and these facts must appear from the testimony of some person who has personal knowledge thereof . . .*'

"Bearing in mind . . . that the attention of the jury will be called to the fact that the proof of trailing is not proof of guilt, . . . we adopt the rule laid down in Pedigo's case as quoted above." Applying this rule to the instant case, it is clear that the sheriff's testimony relating to use of the bloodhounds was not admissible. The sheriff had not trained the dogs and was not their handler; the dog the sheriff testified about was not put on the tracks at the scene of the crime; and the dog did not follow the tracks to the defendants. Rather, the dogs were taken in their boxes to the scene of apprehension, and one of the dogs was taken directly to the car where he "sniffed" one of the two defendants in the car after the car door was opened. This does not meet the test for admissibility set forth in *Aiken,* supra, and it was error to admit such testimony over objection by defense counsel.

2. After eliminating testimony relating to the bloodhounds, we now look to the remaining testimony to determine if it is sufficient to sustain the conviction. First, we note that the Halligans did not authorize anyone to enter their house and remove their property; however, there is no evidence that either George or David O'Quinn entered the house. Looking at the evidence (all of which is circumstantial) in the light most favorable to the state, all that can be said is that there was one set of footprints going from Hutcheson's car to the Halligan's house and back to the car. Two sets of footprints led from the car into the woods, which is consistent with what the O'Quinns testified they did after leaving the car. None of the property removed from the house was in the O'Quinns' possession or in the possession of Hutcheson, and none of it was found in Hutcheson's car. Additionally, while it is difficult to determine from the record, it is apparent that the O'Quinns were apprehended a farily long distance from the Halligan's house. It is difficult to understand why someone intending to burglarize a house would

remove property, set it on the ground and then wander through the woods for several hours leaving their car in front of the house they had just burglarized. In *Mealor v. State,* 134 Ga. App. 564, 565 (215 SE2d 272) (1975) we held: " 'In criminal cases the corpus delicti, the identity of the stolen property, and the accused's connection with the commission of the crime, may all be established by circumstantial evidence *where such evidence is sufficient to exclude every other reasonable hypothesis save that of the guilt of the accused . . .' Worley v. State,* 91 Ga. App. 663 (1) (86 SE2d 702). 'Circumstantial evidence is worth nothing in a criminal case if the circumstances are reasonably consistent with the hypothesis of innocence, as well as the hypothesis of guilt.' *Riley v. State,* 1 Ga. App. 651, 655 (57 SE 1031)." (Emphasis supplied.)

The only evidence we have in this case even remotely connecting the O'Quinns with this burglary is that they were present in a car parked in the road by the Halligan's house. Only one set of tracks went from the car to the house and back, and there was no evidence they were made by George or David O'Quinn. The sheriff's testimony indicated that the tracks of "the other two" led from the car into the woods. Even assuming that Hutcheson committed the burglary, "the mere association" of the O'Quinns with Hutcheson "is not such evidence as to exclude every reasonable hypothesis except . . . guilt. Our criminal jurisprudence has not endorsed the doctrine of guilt by association." *Mealor v. State,* supra. " 'While questions of fact are exclusively for determination of the jury, the question whether or not there is any evidence to support a verdict is one of law; and if, under all legal and logical deductions from the evidence a verdict is unwarranted, this court may and should set it aside.' *Rutland v. State,* 46 Ga. App. 417 (167 SE 705)." *Mealor v. State,* supra. Applying this rule and the rules relating to proof by circumstantial evidence, we cannot say the evidence is sufficient to support the verdict. Lacking proof of unlawful entry by appellants and lacking evidence that any of the allegedly stolen property was in their possession, we are left only with the fact that appellants were apprehended somewhere in the general area. While this may create a suspicion that they were involved in the

burglary, mere suspicion is not sufficient to support a conviction. *Rodgers v. State,* 213 Ga. 797 (1) (102 SE2d 10) (1958); *Mach v. State,* 109 Ga. App. 154 (135 SE2d 467) (1964). "Evidence of mere presence at a place where the offense is being committed, and there being nothing to show the participation of the defendants in the illegal act, is insufficient to authorize conviction." *Huncke v. State,* 137 Ga. App. 299, 300 (223 SE2d 492) (1976). "Tracks found at the scene are insufficient to connect a defendant to the crime unless they are shown to have been those of the defendant." *Huncke v. State,* supra, at p. 300.

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

58728, ARGUED OCTOBER 16, 1979; 58729, SUBMITTED
OCTOBER 16, 1979 —
DECIDED FEBRUARY 14, 1980.

*Earl D. Smith, Jr.,* for appellants.
*Dewey Hayes, District Attorney,* for appellee.