A05A1957. JOHNSON v. THE STATE.
A05A1958. WRIGHT v. THE STATE.
A05A1959. CHAMBERS v. THE STATE.
(627 SE2d 116)

BERNES, Judge.

Sidney L. Johnson, Jr., Geodonald Wright, and Willie Chambers were jointly indicted and convicted of one count of armed robbery (Count 1), four counts of kidnapping (Counts 2-5), five counts of

---

aggravated assault (Counts 6-10), and one count of possession of a firearm during the commission of a crime (Count 11). Wright also was indicted and convicted on two counts of influencing a witness (Counts 12-13). In these companion appeals, Johnson, Wright, and Chambers contend that the trial court erred by denying their respective motions for new trial on several grounds. After reviewing the evidence of record, we conclude that there was insufficient evidence to convict Johnson on Counts 1-11, and so we reverse his convictions. We affirm in all other respects.

Viewed in the light most favorable to the verdict, the evidence reflects that on Friday, September 13, 2002, at approximately 10:00 p.m., three armed, masked black males ran through the front entrance of Mikey's Pizza, a restaurant located in Charlton County. One of the perpetrators pointed a handgun to the head of an employee, jerked the employee from his seat and forced him to walk over and open the cash register. Another employee was ordered at gunpoint to stay seated and to place his head on the table where he sat. The female employees were forced at gunpoint to the back corner of the restaurant and ordered to crouch on the floor.

Moving quickly, the perpetrators seized approximately $650 in United States currency and $1,000 in checks from the cash register. They also removed the change compartment attached to the register. After pushing the register to the floor, the perpetrators fled the scene on foot with the stolen money and change compartment.

911 was called and local law enforcement officials arrived within minutes. Because the perpetrators had been masked, none of the employees was able to identify the perpetrators, other than as black males. Nor was the detective in charge of processing the scene able to obtain any identifiable fingerprints from the restaurant.

The detective contacted a K-9 handler, who came to the scene and attempted to track the perpetrators using a bloodhound. After picking up a track outside the restaurant, the bloodhound quickly led the law enforcement officers to a single check, dated September 13, 2002, payable to Mikey's Pizza, lying on the side of the road approximately two street blocks from the restaurant. In the same vicinity, the bloodhound led the officers to the change compartment that had been taken from the cash register, and to a black Ruger nine millimeter pistol, located approximately three to six feet from the change compartment. The bloodhound eventually lost the track and was unable to lead the officers to any particular suspects. No fingerprints were recovered from the check, the change compartment, or the pistol.

During the course of the subsequent investigation, detectives learned that a young woman by the name of Shannon Gibson had purchased the pistol in January 2002 but then had given it to her boyfriend, Fielding Dean, as a birthday present. Dean also had

another nine millimeter pistol that had been purchased by Gibson, which Dean referred to as "the Luger."

A week prior to the robbery, Dean decided he wanted to sell the Luger pistol. Dean contacted Brandon Smith, a high school classmate, to assist him in the sale. After placing both pistols in his truck, Dean drove while Smith directed him to an area of Charlton County known as "the sticks." Once there, Smith directed Dean to stop in front of a residence where Smith saw defendants Wright and Chambers standing outside. Smith knew Wright and Chambers because the three of them, along with defendant Johnson (who was not present in the yard), were members of the "Baby Gangsters," a group led by Wright.

Wright and Chambers came over to the vehicle, and Smith informed them about Dean's two pistols. They asked if they could see the pistols, and Dean obliged. Wright and Chambers then went into the residence, each carrying one of the two pistols. Neither returned. Dean left the residence empty-handed, with Smith's assurances that Smith would get the two pistols back. Smith never recovered the pistols for Dean, even though he later saw Chambers with the stolen pistols at a basketball court.

Smith saw Chambers again on September 13, 2002, the day of the robbery at Mikey's Pizza. That evening, Smith met up with Chambers and the other two defendants, Wright and Johnson, and together they walked from "the sticks" to a nearby area known as "the projects." The group split up at about 9:30 p.m., at which time Smith went to visit his friend Josh Winn, who lived in the projects. Later that night, sometime after 10:00 p.m., Smith and Winn encountered Wright on a nearby basketball court. Wright was carrying a bag. After they began talking with Wright, defendants Johnson and Chambers walked up, and then all five of them decided to go to Chambers' home.

After all five went into Chambers' bedroom, Wright stated that "he had done a lick." Wright then pulled a large amount of cash and several checks out of the bag he had been carrying. Wright counted the money in the presence of the others and then placed the money in his pocket. He did not give anyone else in the room any of the money. Smith and Winn then departed for Smith's home, where they spent the rest of the night.

Smith ran into Chambers two days later, on September 15, 2002. Chambers told Smith that he had accidentally dropped his gun while taking part in the robbery of Mikey's Pizza. Chambers was worried because he believed that his fingerprints might be on the gun.

Smith was interviewed by a detective with the Charlton County Sheriff's Office on September 18, 2002. Later that same day, a warrant for Chambers' arrest was obtained based on the information provided by Smith. After failing to locate Chambers at his home,

officers drove to the residence where the pistols had been stolen from Dean. When they arrived, Wright and Chambers fled the residence on foot. The officers were unable to catch them.

On September 19, 2002, after Wright learned that Smith had spoken with the detective, he confronted Smith behind one of the buildings in an apartment complex known as "Pine Point." During the course of the 15-to-20-minute confrontation, Wright repeatedly demanded to know what Smith had told the detective. Smith denied ever speaking with the detective, and Wright responded, saying, "Don't lie to me, man, don't lie to me." Afraid for his own safety and worried that Wright "might do something" to him since he had been labeled a "snitch," Smith steadfastly denied speaking with the detective. Smith knew that the Baby Gangsters had a code of silence, and Wright had previously told members of the group that if they spoke to or cooperated with the police, "It's me and you." Smith felt that he could not freely leave or voluntarily end the encounter with Wright. Indeed, the confrontation ended only after Smith's mother drove up and took Smith home.

On September 20, 2002, Smith again spoke with the detective and, among other things, told him about the incident with Wright the previous day. As a result of their conversation, a warrant for Wright's arrest on the charge of influencing a witness was obtained. Officers attempted to execute the warrant upon a room at the Star Motel where Wright had been residing, but were unable to locate Wright at the motel. Unbeknownst to them, Wright had left the state and headed to Jacksonville, Florida. However, ten days later, on September 30, 2002, a city sanitation worker located a firearm later identified as the Luger pistol stolen from Dean in a dumpster next to the Star Motel.

On November 3, 2002, Wright called Smith. During their telephone conversation, Wright again asked Smith what he had told the detective, and Smith denied having told the detective anything. The conversation then abruptly ended.

Wright and Chambers subsequently were arrested in adjoining rooms at a Jacksonville motel on November 12, 2002. In contrast, Johnson never left the state and was arrested in Charlton County.

1. Johnson and Wright contend that the evidence was insufficient to support their convictions on Counts 1-11. On appeal, neither defendant contests the fact that the State's evidence established that three black male perpetrators entered Mikey's Pizza on the night in question and committed armed robbery, kidnapping, and aggravated assault. Rather, both defendants argue that there was insufficient evidence identifying them as the perpetrators.

"In evaluating the sufficiency of the evidence supporting a conviction, this court must view the evidence in the light most favorable

to the verdict. The presumption of innocence no longer applies, and we do not weigh evidence or determine witness credibility." (Citations and punctuation omitted.) *Cobb v. State*, 275 Ga. App. 554 (1) (621 SE2d 548) (2005). Where, as here, the evidence against the defendants is entirely circumstantial, "the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of guilt of the defendant[s]." *Haxho v. State*, 186 Ga. App. 393, 394 (1) (367 SE2d 282) (1988). See also OCGA § 24-4-6. We will not disturb a jury's finding on whether the circumstantial evidence was sufficient unless it is unsupportable as a matter of law. *Matthews v. State*, 257 Ga. App. 886, 887 (1) (572 SE2d 391) (2002).

(a) Guided by these principles, we conclude that there was sufficient evidence to authorize a rational jury to find Wright guilty beyond a reasonable doubt of Counts 1-11. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Based on the evidence at trial, the jury was authorized to conclude that Wright stole Dean's Ruger pistol shortly before the robbery occurred and that this pistol, discovered by bloodhounds in close proximity to Mikey's Pizza and to the stolen check and change compartment, was used in the armed robbery. The jury further was authorized to conclude that Wright was seen with the fruits of the crime, the cash and checks, shortly after the robbery had been committed and, at that time, admitted doing a "lick," or robbery. Finally, the jury was authorized to infer Wright's guilt based on his attempts to influence and intimidate Smith, his flight from officers on September 18, 2002, and his subsequent flight to Jacksonville.

The jury's verdict finding that the circumstantial evidence excluded every reasonable hypothesis other than Wright's guilt of the charged offenses is not insupportable as a matter of law. See *Collins v. State*, 273 Ga. 30, 31 (1) (538 SE2d 34) (2000) (defendant's conduct after the time when an alleged crime occurred is a "circumstance[ ] from which one's participation in the [crime] may be inferred") (citation and punctuation omitted); *Ballard v. State*, 268 Ga. 895 (2) (494 SE2d 644) (1998) (evidence of a defendant's attempt to influence or intimidate witness can serve as circumstantial evidence of guilt); *Renner v. State*, 260 Ga. 515, 517 (3) (a), (b) (397 SE2d 683) (1990) (evidence of defendant's flight can serve as circumstantial evidence of guilt).[1]

---

[1] Because the evidence set forth above was sufficient to sustain Wright's convictions on Counts 1-11, we need not resolve whether the State presented sufficient evidence linking the stolen Luger firearm found outside the Star Motel to the robbery and to Wright.

Although Wright asserts that there were conflicts in the testimony of some of the State's witnesses, including Dean and Smith, and that some of the State's witnesses made prior statements that were inconsistent with their testimony at trial, these conflicts went to the credibility of the witnesses, a matter for the jury to decide. *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001); *Turner v. State*, 270 Ga. App. 245 (1) (606 SE2d 296) (2004). And, the fact that Wright himself testified at trial to a different version of events does not change the result; "the jury here was entitled to disbelieve [Wright's] version of the facts." *Harvey v. State*, 274 Ga. 350, 352 (2) (554 SE2d 148) (2001). Thus, we find no basis for reversing Wright's convictions on Counts 1-11.

(b) In contrast, while the facts and circumstances may have been sufficient to cast a grave suspicion upon Johnson, there was insufficient evidence to authorize a rational jury to find Johnson guilty beyond a reasonable doubt of Counts 1-11. *Jackson*, 443 U. S. 307. The State presented the following evidence to support Johnson's conviction: First, Smith testified that on the night of the robbery, Johnson, Wright, Chambers, and Smith hung out together until they split up at approximately 9:30 p.m. Second, Smith and Winn testified that when they were talking to Wright on the basketball court later that same night, Johnson and Chambers walked up and joined them. Third, Smith testified that Johnson was present later at Chambers' home when Wright stated that he had done a "lick," poured the money out of the bag he was carrying, counted it, and placed it in his own pocket. Fourth, Smith testified that Johnson, along with Smith and the co-defendants, was a member of the Baby Gangsters.

There were no eyewitnesses who saw Johnson participating in the alleged crimes. Neither co-defendant implicated Johnson, and Johnson did not confess to law enforcement or make any incriminating statements to any witnesses regarding the crimes. The State presented no forensic evidence linking Johnson to any of the stolen items or to the crime scene. In contrast to his co-defendants, there was no evidence linking Johnson to a stolen pistol used in the crimes, and there was no evidence that Johnson attempted to harass any potential witnesses or flee from the jurisdiction. Finally, there was no evidence that Johnson received any of the proceeds from the robbery.

The State's evidence showed only that Johnson (like Smith) was an associate of the co-defendants and was present with the co-defendants at some point before and after the time of the alleged crimes. "Our criminal jurisprudence has not endorsed the doctrine of guilt by association." *Mealor v. State*, 134 Ga. App. 564, 565 (1) (215 SE2d 272) (1975). "Mere presence, association or suspicion, without any evidence to show further participation in the commission of the crime is insufficient to authorize a conviction." *Brookins v. State*, 202

Ga. App. 759, 760 (415 SE2d 674) (1992); *Mattox v. State*, 196 Ga. App. 64, 66 (3) (395 SE2d 288) (1990). Indeed, the evidence of presence and association with co-defendants Wright and Chambers at some point before and after the crimes would just as easily have supported the hypothesis that Smith, rather than Johnson, was the third perpetrator.[2] Under these circumstances, the State's evidence was insufficient to show Johnson's participation in the crime and failed to exclude every reasonable hypothesis except for Johnson's guilt. See, e.g., *O'Quinn v. State*, 153 Ga. App. 467, 471-472 (2) (265 SE2d 824) (1980); *Mealor*, 134 Ga. App. at 565 (1); *Coker v. State*, 42 Ga. App. 385 (156 SE 299) (1930). We reverse Johnson's convictions on Counts 1-11.

2. Wright also argues that the evidence was insufficient to support his convictions on Counts 12 and 13. Counts 12 and 13 of the indictment charged Wright with influencing the State's witness, Smith, in violation of OCGA § 16-10-93 (a). Specifically, Count 12 alleged that Wright violated the statute based on his face-to-face encounter with Smith behind Pine Point Apartments on September 19, 2002. Count 13 alleged that Wright violated the statute when he spoke with Smith by telephone on November 3, 2002.

A person violates OCGA § 16-10-93 (a) when he or she, "with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court, . . . communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness." Thus, OCGA § 16-10-93 requires proof that the defendant: (1) acted with intent to deter a witness from testifying freely, fully, and truthfully in any matter pending in court, and (2) directly or indirectly communicated a threat to the witness. See *Markowitz v. Wieland*, 243 Ga. App. 151, 155 (2) (c) (532 SE2d 705) (2000).

We conclude that there was sufficient evidence presented by the State entitling a rational jury to find Wright guilty beyond a reasonable doubt of Count 12. *Jackson*, 443 U. S. 307. The State presented ample evidence that when Wright confronted Smith behind Pine Point Apartments on September 19, 2002, at a time when criminal charges were pending against Chambers, he acted with the requisite criminal intent to deter Smith from properly testifying against Chambers and indirectly communicated a threat to Smith. The defendant's intent may be inferred "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the [defendant] is prosecuted." (Citations and

---

[2] Johnson's theory at trial was that Smith – who was also a member of the Baby Gangsters – was the third perpetrator, and that his alibi, supported by witnesses at trial, rather than that of Smith's, was more believable.

punctuation omitted.) *Carter v. State*, 237 Ga. App. 703, 708 (3) (b) (516 SE2d 556) (1999). In turn, that the defendant's words or conduct communicated an indirect threat to the witness may be inferred from the defendant's "menacing presence" or other surrounding circumstances that cast what otherwise could be perceived as innocuous conduct in a different, sinister light. See id. at 708 (3) (c); *Thomas v. State*, 227 Ga. App. 469, 470 (3) (489 SE2d 561) (1997). Whether the evidence supports such inferences is normally a matter for the jury to decide. See *Carter*, 237 Ga. App. at 708 (3) (b).

Here, when the evidence is construed in the light most favorable to the verdict, Wright's criminal intent and the indirect communication of a threat could be inferred by a reasonable jury from the following: (1) the fact that Wright confronted Smith face-to-face for an extended period in an unusual location, repeatedly quizzing him about what he had told the detective and refusing to accept Smith's answers; (2) Smith's testimony that he was scared for his own safety; (3) Smith's testimony concerning the Baby Gangsters' code of silence and the consequences of violating that code; and (4) Smith's testimony that he would have been unable to voluntarily leave and end the confrontation, had his mother not fortuitously driven up to the scene and picked him up. Furthermore, although Wright's testimony at trial was aimed at showing that his intent in speaking to Smith was solely to gather information on behalf of co-defendant Chambers' newly retained defense attorney, the jury was entitled to accord little weight to this testimony and instead conclude that "the State's evidence tended to show far more." *Nguyen v. State*, 273 Ga. 389, 398 (3) (543 SE2d 5) (2001). See also *Harvey*, 274 Ga. at 352 (2). Hence, we find no basis for reversing Wright's conviction on Count 12.

Count 13, which was predicated on the November 3, 2002 phone conversation, presents a closer question. Nevertheless, we conclude that there was sufficient evidence for a rational jury to convict Wright on this count. The phone conversation must be viewed in the context of the Baby Gangsters' code of silence discussed above, and in light of the fact that Wright had previously confronted Smith face-to-face and had attempted to intimidate him. In light of these surrounding circumstances, a reasonable jury was authorized to conclude that when Wright spoke with Smith on the phone, he acted with the requisite criminal intent and communicated an indirect threat to Smith. *Carter*, 237 Ga. App. at 708 (3) (c); *Thomas*, 227 Ga. App. at 470 (3).

It is true that Smith testified at trial that he was not afraid when he spoke with Wright on the phone. However, Smith's testimony that he was unafraid is not dispositive of whether an indirect threat was communicated by Wright to Smith. The plain language of OCGA § 16-10-93 (a) shows that the crime of influencing a witness focuses

solely on the conduct of the accused and is completed when a direct or indirect threat is communicated to the victim; the degree of fear that the victim experiences *in response to the threat* is not controlling. Cf. *Boone v. State*, 155 Ga. App. 937, 939 (2) (274 SE2d 49) (1980) (degree of fear experienced by victim not controlling in determining whether accused committed crime of terroristic threats). Thus, as we have held in a somewhat similar context, "testimony that the victim was not afraid of the defendant does not preclude conviction." (Citations and punctuation omitted.) *Lunsford v. State*, 260 Ga. App. 818, 821 (2) (581 SE2d 638) (2003) (aggravated assault). See also *Lemming v. State*, 272 Ga. App. 122, 125 (1) (612 SE2d 495) (2005) (aggravated assault). Where, as here, there is at least some circumstantial evidence from which the jury could infer that an indirect threat was communicated to the victim, we will not second-guess the jury and reverse the defendant's conviction. Cf. id. at 125 (1).

3. Johnson asserts that the trial court erred by denying his motion to sever his trial from that of the other defendants. We do not reach this enumeration of error since we already have held that Johnson's convictions must be reversed due to the insufficiency of the evidence.

4. Wright and Chambers contend the trial court erred by allowing the State to elicit testimony that the defendants and Smith were members of a gang called the "Baby Gangsters" from witnesses Dean and Smith. They claim that allowing such testimony improperly placed their character in issue and prejudiced their defense because the defendants' membership in the gang purportedly was not relevant to their commission of the robbery. We disagree.

"Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue." *Wolfe v. State*, 273 Ga. 670, 674 (4) (a) (544 SE2d 148) (2001). Here, the testimony concerning the defendants' membership in the Baby Gangsters was relevant to show how the defendants knew one another, and to provide a context and motive for the defendants' joint participation in the robbery. The testimony also was relevant to explain why Wright received all of the proceeds from the robbery, since the testimony established that Wright was the ringleader of the Baby Gangsters. Finally, the testimony was relevant to show the motive for Wright's questioning of Smith twice after the robbery and to show that the questioning communicated an indirect threat in violation of OCGA § 16-10-93 (a), given that the testimony showed that the Baby Gangsters had a code of silence enforced against group members by Wright. Therefore, Dean and Smith's testimony concerning Smith and the defendants' membership in the Baby Gangsters was admissible, despite the fact

that it may have incidentally placed the defendants' character in issue. See *Billups v. State*, 272 Ga. 15, 16 (2) (a) (523 SE2d 873) (1999); *Mallory v. State*, 271 Ga. 150, 153 (6) (517 SE2d 780) (1999); *Johnson v. State*, 261 Ga. App. 98, 104 (6) (c) (581 SE2d 715) (2003); *Cyrus v. State*, 231 Ga. App. 71, 72-73 (2) (498 SE2d 554) (1998).[3]

5. Finally, Chambers contends that the trial court gave an improper and confusing jury charge on the defense of alibi. As part of its jury charge, the trial court instructed the jury on the defense of alibi as follows:

> The Defendants contend — some of the Defendants contend that they were not present at the scene of the alleged offense at the time of its commission. Alibi as a defense involves the impossibility of the accused's presence at the scene of the alleged offense at the time of its commission. The range of evidence and respective time and place must be such as to reasonably exclude the possibility of the presence of the Defendant at the scene of the alleged offense. Presence of the Defendant at the scene of the crime alleged is an essential element of the crime set forth in this indictment and the burden of proof rests upon the State to prove such beyond a reasonable doubt. Any evidence in the nature of alibi should be considered by you in connection with all the other evidence in the case and if, in doing so, you should entertain a reasonable doubt as to the guilt of the accused, it would be your duty to acquit the Defendants.

Chambers argues that the statement in the charge that "*some* of the Defendants contend that they were not present at the scene of the alleged offense" improperly led the jury to believe that he was conceding his presence at the scene of the robbery, since he did not present an alibi defense.

We do not agree. As an initial matter, we note that the first sentence of the trial court's charge was properly "adjusted to the evidence admitted in court." (Citations and punctuation omitted.) *Brogdon v. State*, 270 Ga. App. 568, 569 (2) (607 SE2d 199) (2004). Both Johnson and Wright presented alibi defenses, while Chambers

---

[3] Although unclear, Wright also appears to contend that Dean's testimony about the Baby Gangsters was inadmissible because his testimony was not based on his own personal knowledge. However, Wright failed to object to the testimony on this ground at trial, and so he waived the right to assert this argument on appeal. *Putman v. State*, 270 Ga. App. 45, 46 (3) (606 SE2d 50) (2004); *Turner v. State*, 241 Ga. App. 431, 435 (4) (526 SE2d 95) (1999). In any event, admission of Dean's testimony on this issue – even if improper because of a lack of personal knowledge – was harmless because it was merely cumulative of Smith's testimony. *Copprue v. State*, 279 Ga. 771, 773 (4) (621 SE2d 457) (2005).

did not. Thus, the reference to "some" of the defendants was accurate and tailored to the evidence.

Nor do we believe that the reference confused the jury into believing that Chambers was conceding his presence at the scene of the robbery. When reviewing a jury charge, we do not read "the wording of isolated segments" in a manner divorced from the context of the charge as a whole. *Watkins v. State*, 265 Ga. App. 54 (592 SE2d 868) (2004). See also *Cody v. State*, 275 Ga. App. 140, 141 (2) (619 SE2d 811) (2005). "Instructions which, when the jury is given credit for ordinary intelligence, are not confusing and prejudicial, are not reversible error." (Citations and punctuation omitted.) *Williams v. State*, 273 Ga. App. 42, 43 (1) (614 SE2d 146) (2005).

After instructing the jury on the defense of alibi, the trial court went on to provide a separate instruction on the question of identity:

> Identity is a question of fact for determination by the jury. . . . It is for you to say whether, under the evidence in this case, the testimony of witnesses and the facts and circumstances of the case sufficiently identify these Defendants as the perpetrators of the alleged crime beyond a reasonable doubt. It is not necessary that the Defendant show that another person committed the offense. It is sufficient, if there are facts and circumstances in this case which would raise a reasonable doubt as to whether these Defendants are, in fact, the persons who committed the crimes. If you do not believe that the Defendants have been sufficiently identified as the persons who committed the crimes, if any, or if you have any reasonable doubt as to such, then it would be your duty to acquit the Defendants. The burden of proof rests upon the State to prove beyond a reasonable doubt the identity of these Defendants as being the persons who committed the crimes alleged in this bill of indictment.

Furthermore, the trial court provided proper instructions to the jury on the burden of proof, on the presumption of innocence, and on the fact that the jury was required to consider the evidence separately for each defendant. Given these combined instructions, in conjunction with the fact that the identity of the perpetrators was hotly contested at trial by all three defendants and was the focal point of all three defendants' closing arguments, we find no grounds for concluding that the jury was confused by the challenged instruction. See *Williams*, 273 Ga. App. at 43-44 (1); *Watkins*, 265 Ga. App. at 56-57 (4).

*Judgment reversed in Case No. A05A1957. Judgments affirmed in Case Nos. A05A1958 and A05A1959. Blackburn, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 6, 2006.

*McGee & McGee, James B. McGee III*, for appellant (case no. A05A1957).

*Martin H. Eaves*, for appellant (case no. A05A1958).

*Joseph E. East*, for appellant (case no. A05A1959).

*Richard E. Currie, District Attorney, Alexander J. Markowich, Assistant District Attorney*, for appellee.