A07A2075. IN THE INTEREST OF C. L., a child.
(657 SE2d 301)

BERNES, Judge.

The juvenile court adjudicated C. L. delinquent after finding that he was guilty of acts, which if committed by an adult, would constitute the crimes of criminal attempt to hijack a motor vehicle and aggravated assault. C. L. appeals, contending that the evidence was insufficient and that the juvenile court should have granted his motion for a continuance. For the reasons discussed below, we affirm in part and reverse in part.

1. C. L. argues that the juvenile court erred in adjudicating him delinquent because there was insufficient evidence that he committed the acts charged in the delinquency petition.

> On appeal, we view the evidence from an adjudicatory hearing in the light most favorable to the prosecution to determine whether a rational trier of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. The evidence is examined under the standard of *Jackson v. Virginia,* 443 U. S. 307, 318 (99 SC 2781, 61 LE2d 560) (1979), with all reasonable inferences construed in favor of the juvenile court's findings.

(Citations omitted.) *In the Interest of M. F.,* 276 Ga. App. 402-403 (1) (623 SE2d 234) (2005).

So viewed, the evidence shows that at approximately 10:00 p.m. on May 12, 2007, Christal Davis, her husband Martin Davis, and their infant son were in the family car at an intersection in Glynn County. Mrs. Davis was driving the vehicle, while Mr. Davis sat in the front passenger seat. While waiting for the traffic light to change, the Davises noticed three males standing on the side of the road who appeared to be arguing with one another. The three males were later identified as C. L., Rudy Figueroa, and Brandon Crittendon. As the three males argued, Mrs. Davis saw C. L. throw his hands up into the air "like he was mad about something, frustrated and fed up." Crittendon then approached the Davises' vehicle, pulled out a handgun from under his shirt, tapped the gun on Mrs. Davis' window,

tugged on her door, and began yelling. Mrs. Davis quickly drove the car away from the intersection as Mr. Davis called the police on his cell phone.

Minutes later, a second incident occurred in the parking lot of a restaurant located approximately 75 to 100 feet from the intersection. Travis McGauley and several of his family members had just exited the restaurant and were in the parking lot near McGauley's truck. As they climbed into the truck, McGauley noticed C. L., Figueroa, and Crittendon standing by the road under a streetlight, arguing loudly and cursing at one another. The three males then crossed together over a ditch separating the road from the parking lot. After crossing the ditch, Crittendon approached the driver's side of McGauley's truck, while C. L. and Figueroa stood approximately eight to ten feet away directly in front of the truck "watching," "looking around, [and] talking." Crittendon pulled out his handgun, fired a shot toward the ground, pointed the gun at McGauley, and yelled at him to get out of the truck. McGauley attempted to pull his truck out of the parking space, and Crittendon fired a shot at the truck, but missed. As McGauley maneuvered his truck out of the parking space, hit a curb, and sped away, the mirror on the passenger side struck Crittendon. McGauley then saw C. L. and Figueroa run over and help Crittendon off the ground. Like the Davises, McGauley immediately called the police after exiting the parking lot.

After receiving a description of the suspects, patrol units quickly began searching for them. C. L. and one of the other perpetrators were apprehended at a nearby apartment complex approximately ten minutes after the second incident. C. L. was "very sweaty" and "out of breath." After he was handcuffed, C. L. spontaneously divulged to the officers that he was out of breath because he had been "running from the police."

The state subsequently filed a petition alleging that C. L. was delinquent based on three charges: criminal attempt to hijack the Davises' motor vehicle; criminal attempt to hijack McGauley's motor vehicle; and aggravated assault against McGauley. At the adjudicatory hearing, the state called the Davises, McGauley, and the investigating officer, all of whom testified to the events as described above. The state also called Figueroa as a witness. On direct examination, Figueroa admitted that he was present with Crittendon and C. L. on the night of the two attempted vehicle hijackings. He further testified that Crittendon had stated to them, "I've got a gun, I'll get us a car." However, on cross-examination, Figueroa elaborated and explained that Crittendon had made the statement right before the first attempted vehicle hijacking while standing at the side of the road. According to Figueroa, both he and C. L. were surprised by Crittendon's statement and tried to dissuade him from attempting to hijack

a vehicle. Figueroa also testified that prior to the first attempt, C. L. made it clear to Crittendon that he did not want to participate in any attempted hijacking of a vehicle. Finally, Figueroa testified that after Crittendon approached the Davises' vehicle brandishing his handgun, Figueroa and C. L. became angry with Crittendon and told him that he should not have done it.

On appeal, C. L. does not dispute that the person who brandished the handgun would be guilty of the three charged offenses. Rather, he maintains that the evidence was insufficient to demonstrate that he was a party to those offenses. More specifically, he contends that the uncontradicted evidence shows that he was merely present at the time of the incidents and disapproved of the criminal acts that were committed.

Even if an accused does not directly commit the crime at issue, he can be found guilty as a party to the crime if he intentionally aids or abets its commission, or "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (3), (4). The factfinder can infer that the accused shared in the perpetrator's criminal intent based on the accused's actions before, during, and after the commission of the crime. *Millender v. State*, 286 Ga. App. 331, 332 (1) (648 SE2d 777) (2007). Likewise, criminal intent may be inferred "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Citation and punctuation omitted.) Id. Bearing these principles in mind, we turn to the charges against C. L. in the present case.

(a) We conclude there was insufficient evidence to find that C. L. was a party to the criminal attempt to hijack the Davises' motor vehicle. The state's evidence as to this charge showed only that C. L. was standing by the side of the road with the two other males prior to the attempted hijacking, and remained on the side of the road when Crittendon approached the Davises' motor vehicle with a handgun and attempted to take their car by force and intimidation. But, "[m]ere presence, association or suspicion, without any evidence to show further participation in the commission of the crime is insufficient to authorize a conviction." (Citations and punctuation omitted.) *Johnson v. State*, 277 Ga. App. 499, 504-505 (1) (b) (627 SE2d 116) (2006). The state presented no additional evidence that C. L. aided, abetted, counseled, encouraged, advised, hired, procured, or approved of Crittendon's actions. Indeed, the state's own witness, Figueroa, expressly testified that C. L. disapproved of Crittendon's conduct and became upset when Crittendon informed them that he had a gun and would get them a car. Figueroa's testimony, in turn, was corroborated by the Davises' testimony that they saw Crittendon, Figueroa, and C. L. arguing on the side of the road prior to the

commission of the offense and that C. L. had appeared mad and fed up. Under these circumstances, the state's evidence was insufficient to allow a rational trier of fact to find beyond a reasonable doubt that C. L. participated in the crime. *Jackson*, 443 U. S. 307. See *Johnson*, 277 Ga. App. at 504-505 (1) (b).

(b) We reach a different conclusion with respect to the criminal attempt to hijack McGauley's motor vehicle and the aggravated assault of McGauley. After the first incident, C. L. was on notice that Crittendon was not bluffing and was intent on hijacking a motor vehicle. Nonetheless, C. L. chose to accompany Crittendon into the restaurant parking lot as Crittendon approached McGauley's truck with a handgun. Based on C. L.'s prior knowledge of what was going to occur in the parking lot, the juvenile court was entitled to infer that C. L. intended to participate in the crimes committed against McGauley. See *Millender*, 286 Ga. App. at 332 (1).

Second, McGauley testified that C. L. stood directly in front of his truck at the time of the attempted hijacking, "watching," "looking around, [and] talking." The juvenile court could infer from this testimony that C. L. was serving as a lookout and was attempting to block McGauley's truck from exiting the parking lot. This evidence further supported the conclusion that C. L. was a party to the two crimes committed against McGauley. See *Cummings v. State*, 227 Ga. App. 564, 566 (489 SE2d 370) (1997) (affirming defendant's conviction as a party to the crime of armed robbery based in part on the defendant's "physical position during the robbery"); *Kimbro v. State*, 152 Ga. App. 893, 894 (264 SE2d 327) (1980) (affirming defendant's conviction as a party to the crime when the defendant "was observed in a position which authorized the inference that he was standing as a lookout").

Third, McGauley testified that he saw C. L. run over and assist Crittendon after he was hit by the mirror on McGauley's truck. A "defendant's conduct after the time when an alleged crime occurred is a circumstance from which one's participation in the crime[s] may be inferred." (Citation and punctuation omitted.) *Johnson*, 277 Ga. App. at 503 (1) (a).

Fourth and finally, the investigating officer's testimony, and C. L.'s own admission to the officer, established that C. L. fled from the scene with one of the other suspects, and was attempting to hide from the police at a nearby apartment complex when he was caught. The juvenile court was authorized to infer from C. L.'s flight immediately after the perpetration of the crimes, his attempt to hide from police, and the other evidence set forth above "that he was a participant and not merely a bystander." *Cummings*, 227 Ga. App. at 566.

For these combined reasons, we conclude that the state's evidence was sufficient to allow a rational trier of fact to find beyond a

reasonable doubt that C. L. participated in the criminal attempt to hijack McGauley's motor vehicle and the aggravated assault of McGauley. *Jackson*, 443 U. S. 307. However, in light of our decision in Division 1 (a) that there was insufficient evidence that C. L. was a party to the attempted hijacking of the Davises' vehicle, we must vacate the order of disposition and remand to the juvenile court for resentencing. See *In the Interest of N. L. G.*, 267 Ga. App. 428, 430 (2) (600 SE2d 401) (2004).

2. C. L. also maintains that the juvenile court abused its discretion in denying his motion for a continuance. Prior to the adjudicatory hearing, trial counsel for C. L. argued that he was not prepared to try the case and that a continuance was necessary on two grounds. First, trial counsel noted that he was newly appointed and asserted that he needed time to obtain and review a transcript of the detention hearing held ten days prior to the adjudicatory hearing, at which time C. L. had been represented by different appointed counsel. Second, trial counsel argued that a continuance was necessary so that he could subpoena "one of the co-defendants" who had "exculpatory evidence" that should be brought before the court. We find no grounds for reversal.

> [A] motion for a continuance predicated on the basis of counsel's lack of preparation for trial addresses itself to the sound discretion of the trial court and a ruling denying such a motion will not be interfered with unless the court has abused its discretion in denying the motion. . . . Mere shortness of time does not by itself show a denial of the rights of the accused, and mere shortness of time will not reflect an abuse of the trial court's discretion in denying a continuance, where the case is not convoluted and is without a large number of intricate defenses.

(Citations and punctuation omitted.) *In the Interest of S. U.*, 232 Ga. App. 798, 800 (1) (503 SE2d 66) (1998). Additionally, "[w]hen there is no showing that a continuance would have benefitted the defendant, he has not established harm in the denial of the continuance." (Footnote omitted.) *Currington v. State*, 270 Ga. App. 381, 386 (3) (606 SE2d 619) (2004).

Here, the state's case and C. L.'s defense were straightforward and uncomplicated. The central issue was whether C. L. was merely present at the scenes of the crimes or was a party to the crimes — an issue that turned on the eyewitness testimony as to what occurred and the inferences that could be drawn from that testimony. Nor did either side rely on scientific evidence or expert testimony in support of its position.

In addition to the straightforward nature of the case, C. L. has failed to show that he was harmed by the denial of the continuance. Although C. L. claims that a continuance should have been granted so that a transcript of the detention hearing could have been obtained and reviewed by his counsel, C. L. has failed "to demonstrate specifically how the transcript would have helped his examinations at trial or otherwise assist[ ] in his defense." *Cunningham v. State*, 244 Ga. App. 231, 233 (1) (535 SE2d 262) (2000). Moreover, C. L. has failed to show how additional time to subpoena "one of the co-defendants" (presumably Crittendon) would have benefitted him in any way at the adjudicatory hearing. There is nothing in the record to suggest that Crittendon would have testified rather than have pled the Fifth Amendment, much less have testified favorably to C. L. And, in any event, Crittendon's testimony, even if favorable, would have been cumulative of Figueroa's testimony in favor of C. L. Under these circumstances, we find no basis for reversal based on the denial of the motion for a continuance. See *Smith v. State*, 267 Ga. 502, 503 (1) (480 SE2d 838) (1997) ("The failure to grant a continuance for testimony which is merely cumulative is not reversible error.") (citation and punctuation omitted); *Cunningham*, 244 Ga. App. at 233 (1) (inability to obtain transcript not grounds for reversal when defendant fails to show how he was harmed by not having access to the transcript at trial); *Beene v. State*, 202 Ga. App. 857 (1) (415 SE2d 545) (1992) (same as *Cunningham*).

*Judgment affirmed in part, reversed in part, and case remanded. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 29, 2008.

*Dante L. Hudson*, for appellant.
*Stephen D. Kelley, District Attorney, W. Franklin Aspinwall, Jr., Assistant District Attorney*, for appellee.