## A99A1381. CRUMPTON v. THE STATE.
### (523 SE2d 624)

BARNES, Judge.

Michael Crumpton was convicted of two counts of burglary. Following the denial of his motion for new trial, Crumpton appeals, claiming that the State failed to prove his involvement in the two break-ins because he was in jail at the time both crimes were committed.

Along with his two brothers, Darious and Curtis Crumpton, and a first cousin, Robert Bowen, Michael Crumpton was tried under a two-count indictment for the burglary of two businesses: the Pickle Shed on July 22, 1996, and the Berrien Gin Company on August 5, 1996. Payroll checks were stolen in the first burglary and business checks and a typewriter in the second.

Shortly thereafter, forged checks stolen from the Pickle Shed and the Berrien Gin Company began being cashed, eventually totaling more than $23,000. According to Georgia Bureau of Investigation Agent Michael Clayton and Berrien County Sheriff Jerry Brogdon, the Crumptons' brother-in-law, Joseph Martin, confessed that he, Curtis Crumpton, and Darious Crumpton burglarized the Berrien Gin Company and the Pickle Shed. Martin, who provided a written statement to investigators, led them to a large bag of stolen checks and entered guilty pleas to both burglaries.

At trial, however, Martin claimed he acted alone in both break-ins and retracted his earlier statement implicating Curtis and Darious Crumpton. Martin testified that before these burglaries, he never discussed, called, or conferred with Michael Crumpton about "hitting any places." Martin denied that Michael Crumpton was involved in the burglaries or helped in any way, nor was GBI Agent Clayton able to link Michael Crumpton to either burglary.

The State's own witness conceded that Michael Crumpton was in jail in another county when both burglaries occurred.[1] When Sheriff Brogdon was asked if he would agree that Michael Crumpton did not participate in the cotton gin burglary, he responded, "I would agree from the records and what I know that, no, Michael Crumpton wasn't physically there at the cotton gin or at the [P]ickle [S]hed at the time that those two buildings were entered and those checkbooks were seized." Sheriff Brogdon added that he had no reason to doubt that Michael Crumpton "was in jail the day that these two burglaries occurred." Sheriff Brogdon also conceded that Martin did not implicate Michael Crumpton. According to the Sheriff, the only evidence allegedly connecting Michael Crumpton to the two burglaries for

---

[1] Michael Crumpton was arrested on an unrelated matter on July 3, 1996, and released on November 11, 1996.

which he was under indictment was $4,837 worth of forged checks from the Pickle Shed and the Berrien Gin Company that were cashed after the burglaries.

Four former crack addicts testified for the State at trial. Thomas Sheppard, an inmate serving time for a forgery conviction, admitted cashing checks for the other defendants but denied even knowing Michael Crumpton. Kevin Washington similarly denied having any dealings with Michael Crumpton but implicated two of the other defendants. Kenneth Rountree, an inmate serving time for possession of cocaine, denied that Michael Crumpton ever tried to get him to cash any checks. Rountree, however, claimed that on one occasion Michael Crumpton knew that they were going to cash some forged checks because Curtis Crumpton borrowed his car. Derrick Davis, who received a probated sentence for forgery, implicated all three Crumptons in cashing checks from the Pickle Shed.

1. Crumpton contends that the trial court erred in denying his motion for directed verdict. We agree and reverse.

A motion for directed verdict in a criminal trial should be granted only where the evidence does not conflict and demands a verdict of acquittal as a matter of law. *Alexander v. State*, 263 Ga. 474, 478 (3) (435 SE2d 187) (1993). Although the State offered evidence indicating that Martin, along with Darious and Curtis Crumpton, committed the two burglaries, no evidence showed that Michael Crumpton actually participated in either planning or executing them. OCGA § 16-7-1. Because no evidence showed Michael Crumpton's participation in either break-in, the question is whether the State proved that he was a party to the crimes or a co-conspirator.

OCGA § 16-2-20 (b) provides in pertinent part that a person may be found guilty as a party to a crime only if that person "[i]ntentionally aids or abets in the commission of a crime[ ] or . . . [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." Here, neither direct evidence nor sufficient circumstantial evidence existed to convict Michael Crumpton as a party to the crimes. See *Bullard v. State*, 263 Ga. 682, 685 (1) (436 SE2d 647) (1993) (defendant's participation in concealing the victim's body did not make her a party to the crime). At most, the State's evidence indicated that after these burglaries occurred, Michael Crumpton could have been involved in cashing some of the stolen checks. Compare *Todd v. State*, 189 Ga. App. 538, 540 (2) (376 SE2d 917) (1988) (by offering to purchase stolen guns, the defendant became a party to the crime because he encouraged the commission of the burglary). Although the State presented proof that the burglaries occurred and that Michael Crumpton had taken one crack addict to cash a forged check afterward, the State presented no proof that Michael Crumpton had intentionally advised, encouraged, hired,

counseled, or procured anyone to commit the crimes. Moreover, an accessory after the fact is not a party to the crime within the meaning of OCGA § 16-2-21. *Martinez v. State*, 222 Ga. App. 497, 499 (2) (474 SE2d 708) (1996).

Conspirators are responsible for the acts of each other in carrying out their common purpose or design, although these acts may constitute another criminal offense. *Solomon v. State*, 180 Ga. App. 636 (1) (350 SE2d 35) (1986).

> Conspiracy may be established by inference, as a deduction from acts and conduct establishing a common design to act together for the accomplishment of an unlawful purpose. Once that common design is shown by evidence tending to indicate that the individuals have associated themselves together to do an unlawful act, any act done in pursuance of that association by any one of the associates, would, in legal contemplation, be the act of each of them.

(Citations omitted.) *Ferrell v. State*, 169 Ga. App. 592, 593 (1) (314 SE2d 253) (1984).

However, the State did not offer any evidence which showed that Michael Crumpton participated in an ongoing burglary. Although Sheriff Brogdon testified that the scheme started in 1994, the State offered no evidence that Michael's involvement began at that time. Even though Michael Crumpton might well have participated in a criminal enterprise to steal business checks, forge them, and enlist crack addicts to cash them, as the prosecutor suggested to the court, the State presented no witnesses connecting him to any conspiracy existing when these two burglaries occurred. See *Kilgore v. State*, 251 Ga. 291, 298-300 (3) (c) (305 SE2d 82) (1983). Nor did the State offer any evidence that Michael Crumpton helped originate or orchestrate a common scheme to commit the burglaries. Compare *Bruce v. State*, 263 Ga. 273, 275 (5) (430 SE2d 745) (1993) (where defendant helped design a common scheme to commit the burglary, the fact that he did not participate in the actual burglary was irrelevant).

Conspiracy may be proven by circumstantial evidence. *Waldrip v. State*, 266 Ga. 874, 880 (3) (471 SE2d 857) (1996). But, here, none was offered. Compare *Robertson v. State*, 268 Ga. 772, 773-774 (1) (493 SE2d 697) (1997) (defendant acted as "set up" man by supplying information about potential burglary targets); *Peach v. State*, 168 Ga. App. 55 (2) (308 SE2d 60) (1983) (burglary traced to Peach's co-defendant and evidence connected Peach to mobile home where stolen goods were located).

2. In light of our holding in Division 1, we need not reach the remaining enumerations of error.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 19, 1999.

John W. Strickland, Jr., for appellant.

Robert B. Ellis, Jr., District Attorney, Timothy L. Eidson, Assistant District Attorney, for appellee.