A08A1518. SHEARIN v. THE STATE.
A08A1519. CARUTHERS v. THE STATE.
A08A1520. DELLEMAR v. THE STATE.
(668 SE2d 300)

MIKELL, Judge.

Reheim Jaahad Shearin, Tyrone Caruthers, and Jason Tyrone Dellemar (sometimes hereinafter collectively referred to as "appellants"), along with Johntavis Jermaine Kellom, were jointly indicted and charged as a party to the crime with the offenses of kidnapping with bodily injury (OCGA § 16-5-40), riot in a penal institution (OCGA § 16-10-56), robbery (OCGA § 16-8-40), and escape (OCGA § 16-10-52). Kellom pled guilty as charged and was sentenced prior to the trial of appellants. After the jury was selected and sworn, but before the opening statements of counsel, Shearin, Caruthers, and Dellemar each pled guilty to the charge of escape. The jury found each of the appellants guilty of false imprisonment (as a lesser included offense of kidnapping with bodily injury) and of robbery. The jury acquitted appellants of kidnapping with bodily injury and of riot in a penal institution. Shearin appeals in Case No. A08A1518, Caruthers in Case No. A08A1519, and Dellemar in Case No. A08A1520. Each appellant challenges the sufficiency of the evidence

---

against him, as well as enumerating other errors. The cases involve the same set of facts, so we have consolidated them for disposition. Because we agree that the evidence presented at trial was insufficient to support appellants' convictions, we reverse.

1. On appellate review of a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to support the verdict, and the defendant no longer enjoys the presumption of innocence.[1] "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[2]

> Moreover, the test established in *Jackson* is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.[3]

So viewing the evidence, the record reflects that on November 5, 2006, appellants and Kellom were all inmates at the Wilcox County jail, in Abbeville, Wilcox County. The jail was designed to hold 16 inmates, but that night there were from 30 to 32 inmates in the jail. The inmates all had access to the jail's common area, which contained a television. The victim, Richard Knight, who worked for the Wilcox County Sheriff's Office as the night jailer and radio dispatcher, was on duty by himself in the office adjacent to the jail. Between the office and the jail were two connecting doors, both of which were kept closed and locked: a solid steel door on the office side, and a door made of bars (the bar door) on the inmates' side. The steel door opened directly onto the bar door. According to Wright's testimony, the inmates could reach through the bars of the bar door and knock on the steel door, and they did so "at all times of the night wanting medicine and such as that"; the jailer could then open the steel door and hand needed items through the bar door to the inmates. The television was six to seven feet from the bar door.

Knight testified that at about 1:15 a.m. that night, he heard the television in the common area of the jail turned up "real loud." He opened the steel door to the jail area and asked the inmates to turn the television down, and they did so. About 15 minutes later, the

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[2] *Boyd v. State*, 289 Ga. App. 342 (1) (656 SE2d 864) (2008), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citations and punctuation omitted.) *Short*, supra.

television volume was turned back up. Knight opened the steel door again to find Kellom standing on the inmates' side of the bar door. One other inmate was lying down by the television in the common area, but Knight was unable to identify that inmate or to give any description of him. Knight saw no other inmates near the door. Kellom said something to Knight, but Knight could not hear it over the noise of the television. As Knight leaned in toward the bar door to hear, Kellom reached through the bar door and seized Knight's shirt. Knight tried to get away, but two more inmates ran up and joined in the attack, grabbing his belt and pulling him toward the bar door. Knight received a blow in the eye, which broke his glasses and caused such bleeding that he could not see. Knight ceased resisting when his attackers started to hit him in the chest, because he had previously had open heart surgery. The inmates reached around Knight and got the keys out of the steel door. They opened the bar door and dragged Knight inside the jail area, throwing him on the ground on his left side. One of his attackers reached in Knight's right pants pocket, took out the keys to Knight's truck, and kicked Knight in the back. The inmates then fled, locking the bar door and closing (but not locking) the steel door behind them. Knight consistently testified that he was attacked by three inmates, Kellom and two others; however, he was never able to identify the two inmates who took part in the attack along with Kellom.

With the assistance of the other inmates, Knight was able to call Wilcox County Sheriff Stacy Bloodsworth on the telephone inside the jail common area and tell him that three prisoners had escaped. A roll call of the inmates conducted immediately after the incident, however, revealed that four prisoners had escaped: Kellom, Shearin, Caruthers, and Dellemar. In the office area, two or three of the clear plastic boxes in which the inmates' street clothes were stored had been pulled off the shelves and the clothing gone through; some inmate uniforms were also on the floor. The next morning, some inmate uniforms were found in a yard about 300 yards away from the jail. Appellants Kellom, Caruthers, and Shearin were recaptured together about 12 hours after the escape in a neighboring county. Appellant Dellemar was recaptured about 24 hours after the escape in another nearby county.

"Where, as here, the evidence against the defendants is entirely circumstantial, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of guilt of the defendants."[4] "Whether any given

---

[4] (Citations and punctuation omitted.) *Johnson v. State*, 277 Ga. App. 499, 503 (1) (627 SE2d 116) (2006). See also OCGA § 24-4-6.

hypothesis is reasonable is a question for the jury, and we will not disturb the jury's finding in this regard unless it is unsupportable as a matter of law."[5]

In this case, the victim could only say that he was attacked by three inmates; he identified Kellom but could not identify the two others. Knight gave the only testimony of the attack upon him, and there was photographic evidence of the injuries he incurred in the attack; but no one else gave testimony of the attack. None of the other inmates who were in the Wilcox County jail that night testified at the trial. No fingerprint evidence or surveillance camera tapes were introduced at trial. Thus, the only evidence connecting appellants to the crimes committed against Knight was that they escaped at the time of the attack. Obviously, their escape creates a "strong suspicion" that two of the three appellants might have been the two malefactors who took part with Kellom in the attack. But although the evidence may create a strong suspicion, "mere suspicion is insufficient to support a conviction."[6] There is no evidence showing a conspiracy among the three appellants or indicating that they were parties to the crimes charged.[7] It is a reasonable hypothesis that one of the three appellants merely seized the opportunity to flee from the jail, thus committing the offense of escape, for which each appellant has pled guilty. Under the circumstances of this case, we conclude that the evidence presented, although it is "consistent with the hypothesis of guilt,"[8] does not "exclude every other reasonable hypothesis save that of the guilt of the accused."[9]

Knight testified that the inmate who took his keys from his pants pocket on the night of the attack did not first pat him down or feel around for the keys, but went directly for the pants pocket where he kept the keys. Knight further testified that Caruthers had washed Knight's truck "a couple of times" and would have known that Knight kept his truck keys in his right hand pants pocket. There was also testimony that Caruthers had helped the jail personnel to set up the system whereby the inmates' street clothes were stored in clear plastic boxes in the office. But even if Caruthers had special information concerning the location of Knight's keys and the system

---

[5] (Footnote omitted.) *Rowe v. State*, 280 Ga. App. 881, 882 (635 SE2d 251) (2006).

[6] (Citation omitted.) *Fitz v. State*, 201 Ga. App. 83, 86 (410 SE2d 186) (1991).

[7] OCGA § 16-2-20 (b) ("A person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime").

[8] OCGA § 24-4-6.

[9] Id.

for storing the inmates' clothes, there was no evidence that Caruthers was the only inmate with such information.

The state also relies on the fact that Kellom and two appellants were found in the same location, running in the same direction. This evidence shows only that, *after* the escape, these three escapees were together. And, of course, the state's argument does not apply to Dellemar, who was recaptured at another time and in another location entirely. "Our criminal jurisprudence has not endorsed the doctrine of guilt by association."[10] Further, "mere presence, association or suspicion, without any evidence to show further participation in the commission of the crime[,] is insufficient to authorize a conviction."[11]

The state has presented evidence that two inmates (and Kellom) attacked Knight; but the state has not presented evidence that would allow a jury to determine which two of the three appellants were Knight's attackers; nor has it presented evidence to show that any of the appellants were parties to the crime who "intentionally advised, encouraged, hired, counseled, or procured anyone to commit the crimes."[12] Such evidence might suffice had it been introduced as to *all* the appellants in this case, but the state has not introduced such evidence as to *any* of the appellants. We conclude, therefore, that under the circumstances presented here, the state has failed to present evidence which excludes every other reasonable hypothesis save that of appellants' guilt.[13] Accordingly, their convictions must be reversed.

2. In light of our holding in Division 1, we need not reach appellants' remaining enumerations of error.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 2, 2008.

*David E. Morgan III*, for appellant (case no. A08A1518).
*John C. Cotton*, for appellant (case no. A08A1519).
*Timothy L. Eidson, Steven W. Czarnota*, for appellant (case no. A08A1520).

---

[10] (Citations omitted.) *Mealor v. State*, 134 Ga. App. 564, 565 (1) (215 SE2d 272) (1975). Accord *Johnson*, supra at 504 (1) (b).
[11] (Citation and punctuation omitted.) *In the Interest of C. L.*, 289 Ga. App. 377, 379 (1) (a) (657 SE2d 301) (2008).
[12] *Crumpton v. State*, 240 Ga. App. 422, 423-424 (1) (523 SE2d 624) (1999). Accord *Hunt v. State*, 244 Ga. App. 578, 580 (536 SE2d 251) (2000).
[13] See *Hunt*, supra at 581.

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.