A08A1886. GORDON v. THE STATE.

(670 SE2d 533)

ELLINGTON, Judge.

A Chatham County jury found Anthony Gordon guilty of aggravated assault, OCGA § 16-5-21 (a) (2) (assault with a deadly weapon), and possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b) (1). He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions, the jury's verdict was contrary to the evidence, and the trial court erred in limiting his testimony at trial. Finding no error, we affirm.

1. We review Gordon's challenge to the sufficiency of the evidence and his claim that the verdict was contrary to the evidence pursuant to the following standard:

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty

beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

Viewed in this light, the record reveals the following facts. On February 2, 2005, Gordon asked his long-time friend, David Jackson, to drive him to a bank so he could get cash and repay Jackson money he owed on a loan. While driving to the bank, Jackson slowed down to cross some train tracks and looked to his left to check for oncoming trains. When Jackson looked to his right, Gordon was pointing a .32 caliber revolver at Jackson's head. Jackson denied that he threatened or touched Gordon prior to the time when Gordon pulled out the gun. Jackson reached for the gun but, before he could grab it, Gordon shot Jackson in the head. Although shot, Jackson continued to fight for the gun and called out for help.

Jackson's truck, which was still moving, careened into a ditch and rolled on its side. As bystanders approached the truck, they heard someone cry out for help, saying "He's trying to kill me." The bystanders moved away from the truck out of concern for their safety, but one of them called 911.

In the meantime, Jackson was able to wrest the gun away from Gordon and empty the gun's cylinder onto the floor. Jackson crawled out of the truck and started running away. Gordon reloaded the gun and followed Jackson. Jackson soon collapsed on the road, and a witness saw Gordon walk up to Jackson, bend over, and say something to him. Gordon then started walking away, but was stopped by police officers who had arrived on the scene. One officer saw that Gordon had his hand in his pocket and asked him if he had a gun, and Gordon responded, "I do, and I'm going for it." The officers restrained and handcuffed Gordon and retrieved a .32 caliber handgun, which had one spent shell casing in its cylinder. While he was being handcuffed, Gordon blurted out, "I shot him because he tried to rob me."

After the officers arrested Gordon, he gave a custodial statement in which he asserted that, while he was riding with Jackson, Jackson suddenly pushed his head against the passenger window and demanded money. Gordon admitted that, although he did not see Jackson with a weapon, he pulled out his gun and fired it once in the direction of Jackson. Gordon said that, although Jackson did not seem to be injured, he helped Jackson out of the truck, at which time Jackson ran down the road. According to Gordon, he ran after Jackson and stayed with him until the police arrived.

At trial, Gordon tried to convince the jury that Jackson was a violent felon who suddenly and without warning reached over and grabbed Gordon by the throat, pushed him into the passenger window, and demanded money that Gordon owed him. Gordon testified that he pulled out his gun in self-defense and, as the two

men fought over it, he pulled the trigger, shooting Jackson in the ear. Gordon said that he did not intentionally shoot Jackson and that he was not carrying a weapon with the intent of injuring Jackson. Gordon also testified that he was afraid of Jackson, but admitted that he did not think Jackson had a weapon and, in fact, had never seen Jackson carry a weapon in the 15 years he had known Jackson.

On appeal, Gordon argues that the jury erred in finding him guilty of aggravated assault with a deadly weapon[1] because the evidence showed that he did not intend to shoot Jackson and that he only acted in self-defense.[2] The jury, however, is solely responsible for determining the accused's intent in committing an act, resolving conflicts in the evidence, and judging the witnesses' credibility. OCGA § 16-2-6 (whether an accused committed an act with criminal intention is a question of fact to be resolved by the trier of fact after consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act); *Adams v. State*, 293 Ga. App. 377, 379 (667 SE2d 186) (2008) ("[C]riminal intent may be inferred from the circumstances, . . . [and the] jury was not required to accept [Gordon's] trial testimony as true, but could judge his credibility and weigh his testimony against other evidence.") (punctuation and footnotes omitted).

Viewing the evidence presented in favor of the jury's verdict, we find that it was sufficient to support the jury's conclusion that Gordon did not shoot Jackson in self-defense and that he was guilty beyond a reasonable doubt of aggravated assault with a deadly weapon. *Bartlett v. State*, 244 Ga. App. 49, 50-51 (537 SE2d 362) (2000).

2. Gordon claims the trial court erroneously limited his testimony at trial and denied him his constitutional right to present a defense when it prevented him from testifying that he did not intend to assault Jackson. This argument lacks merit.

As shown above, Gordon testified at trial that he did not intentionally shoot Jackson and that he was not carrying a weapon with the intent to injure Jackson. His defense counsel subsequently posed the following question: "[Y]ou've been accused in this Bill of Indictment that on February 2, 2005, [you assaulted] David Jackson with a deadly weapon, a pistol, and it says you knowingly, intentionally and unlawfully assaulted him. Did you intend to assault him?"

---

[1] A person commits an assault when he or she either "[a]ttempts to commit a violent injury to the person of another; or . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). Under OCGA § 16-5-21 (a) (2), "[a] person commits the offense of aggravated assault when he or she assaults [another] [w]ith a deadly weapon."

[2] See Division 2, infra.

As the State objected to the question, Gordon concurrently answered, "No." The State proceeded to explain that it was not objecting to Gordon testifying about what he was thinking, but that defense counsel should not be allowed to ask Gordon whether he was guilty of the crime as alleged in the indictment, because that was an ultimate question of fact reserved for the jury. The court agreed and asked defense counsel to rephrase the question. Defense counsel then asked Gordon, "Did you intend to shoot that man?" The State did not object, and Gordon answered, "No." Counsel also asked Gordon if he was afraid for his safety and if he shot his gun because he thought he needed to protect himself, and Gordon answered "yes" to both questions.

As noted above, the trier of fact is solely responsible for determining whether an accused committed an act with the requisite criminal intent. OCGA § 16-2-6. Thus, in this case, whether Gordon shot Jackson with the intention of assaulting him (in other words, with the intention of injuring him or of placing him in reasonable apprehension of receiving a violent injury) or whether Gordon shot in the direction of Jackson while acting in self-defense was an issue of ultimate fact to be decided by the jury. Id.; *Adams v. State*, 293 Ga. App. at 379. Thus, the court did not err in sustaining the State's objection to defense counsel's question. See *Mitchell v. State*, 222 Ga. App. 878, 879 (3) (476 SE2d 604) (1996) ("Ordinarily, a witness may not express his opinion as to an ultimate fact, because to do so would invade the province of the jury.") (citation and punctuation omitted).

Moreover, Gordon was allowed to testify at length about his version of the events before and after the shooting, during which he insisted that he did not intend to shoot Jackson and that he only shot the gun in self-defense. Therefore, even if the court erred in trying to prevent Gordon from testifying that he did not intend to "assault" Jackson, the error was harmless in that it would have been merely cumulative of other evidence supporting Gordon's claim of self-defense. See *Brown v. State*, 268 Ga. App. 24, 27-28 (2) (601 SE2d 405) (2004) ("the exclusion of evidence which is merely cumulative is not reversible error") (footnote omitted).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 26, 2008.

*William S. Lewis*, for appellant.
*Spencer Lawton, Jr., District Attorney, Arvo H. Henifin, Assistant District Attorney*, for appellee.