A09A2288. McCOWAN v. THE STATE.
(691 SE2d 360)

MILLER, Chief Judge.

A Carroll County jury convicted Larry McCowan on single counts each of rape (OCGA § 16-6-1), aggravated sodomy (OCGA § 16-6-2), kidnapping with bodily injury (OCGA § 16-5-40), and cruelty to children — first degree (OCGA § 16-5-70 (b)) and on three counts of child molestation (OCGA § 16-6-4). The trial court denied McCowan's motion for a new trial, and McCowan now appeals, arguing that (1) the trial court erred by allowing the State to elicit testimony to bolster the victim's credibility and (2) his trial counsel rendered ineffective assistance of counsel by eliciting and allowing the introduction of hearsay. Concluding that no improper bolstering occurred and that trial counsel's assistance was effective, we affirm.

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the evidence shows that on January 5, 2007, the five-year-old victim and her seven-year-old brother spent the night at the home of Frances Adams ("Adams"), an acquaintance of the victim's mother. Adams' daughter, Dee Dee Adams ("Dee Dee"), resided with Adams. Dee Dee went out in the evening and returned home with her boyfriend in the early morning hours of January 6, 2007. A few minutes later, McCowan knocked on Adams' front door, awakening Adams. When Adams answered the door, McCowan asked her if he could spend the night at her house. Adams consented, gave him a cushion to sleep on in the front room, and went back to bed.

Thereafter, the victim, who had been sleeping in the same bed as

Adams, got up and went into the room where her brother was sleeping to check on him. While she was in her brother's room, McCowan came in, picked her up, and, covering her mouth with his hand, carried her outside to the backyard. The victim testified that she screamed and hit McCowan as he took off her clothes and pulled down his pants. According to the victim, McCowan put his "pee pee" in her "pee pee." While laying on top of the victim, McCowan pushed against her, causing her head to knock repeatedly against the side of a shed. McCowan called the victim names, including "bitch," and hit her on her head and face. McCowan also put his penis in the victim's mouth and put his fingers in her vagina.

After McCowan took the victim outside, the victim's brother went to Adams and told her that the victim was missing. With Dee Dee's help, Adams began searching for the victim. Adams and Dee Dee went outside when they could not find either the victim or McCowan inside. There, according to her later reports to police, Adams saw McCowan with his penis in the victim's mouth. Dee Dee grabbed the victim and took her inside, and Adams locked McCowan out of the house.

The victim's mother testified that when she arrived to pick up her children the following morning, the victim was "all bruised and her face [was] real swollen up," her hair was matted, and she had leaves and debris all over her hair and body. After the victim's mother took the victim home, she found leaves and sticks on and in the victim's vagina and around her anus and discovered a laceration on the back of the victim's head. The victim's mother subsequently took the victim to the hospital. The doctor who examined the victim at the hospital testified that the victim "had been assaulted pretty badly" and had bruises on her face, a laceration to her scalp, and abrasions on her back and shoulders. He found that the victim had a small tear in her vaginal area and a torn hymen. Five staples were required to close the laceration on the victim's head.

1. McCowan contends that the trial court erred in allowing the victim's mother and the nurse and doctor who treated the victim at the hospital to offer testimony that improperly bolstered the victim's credibility. We disagree.

The victim's mother testified at trial that when she arrived to pick up her children at Adams' house and noticed the victim's injuries and disheveled appearance, she asked the victim what happened. Over defense counsel's objection, the victim's mother went on to state that the victim's response did not appear to be "rehearsed" or "coerced." Similarly, despite defense counsel's objections, a nurse who interviewed the victim at the hospital testified that when she asked the victim what had happened, the victim's responses appeared to be spontaneous and not rehearsed, and the

victim's treating doctor testified that the victim's answers to his questions did not appear rehearsed.

"In Georgia, the credibility of a witness is to be determined by the jury, and the credibility of a victim may not be bolstered by the testimony of another witness. Thus, a witness may not give an opinion as to whether the victim is telling the truth." (Punctuation and footnotes omitted.) *Stillwell v. State*, 294 Ga. App. 805, 806-807 (2) (a) (670 SE2d 452) (2008). Here, the victim's mother and her treating nurse and doctor did not express their beliefs as to the veracity of the victim. Compare *Williams v. State*, 290 Ga. App. 841, 845-846 (4) (c) (660 SE2d 740) (2008) (police officer's testimony that he knew the victim was not lying was improper); *Crider v. State*, 246 Ga. App. 765, 769 (4) (a) (542 SE2d 163) (2000) (police officer's testimony that he believed victim was being truthful was improper). Rather, their testimony was addressed to the issue of whether they saw any indications in the victim's manner of responding that others had told the victim what to say. As we held in *Stillwell*, supra, such testimony did "not impermissibly address the ultimate issue before the jury or bolster the [victim's] credibility." (Punctuation and footnote omitted.) 294 Ga. App. at 807 (2) (a) (family lawyer did not improperly bolster victim's credibility by testifying that he saw no evidence of coaching when the victim disclosed sexual abuse); see also *Osborne v. State*, 291 Ga. App. 711, 713-714 (3) (662 SE2d 792) (2008) (expert's testimony that victim's manner of responding in interview showed signs of spontaneity and detail inconsistent with coaching was not improper).

2. McCowan argues that his trial counsel rendered ineffective assistance of counsel by eliciting and permitting the State to introduce hearsay statements of the victim's brother. We disagree.

> To prevail on a claim of ineffective assistance of trial counsel, [a criminal defendant] must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Matthews v. State*, 284 Ga. 819, 821-822 (4) (672 SE2d 633) (2009). On appeal, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

On cross-examination by defense counsel, the victim's mother testified that the victim's brother had told her that "someone named

Larry" came in and picked up the victim but admitted that the victim's brother did not describe what "Larry" looked like. On redirect, the mother, responded affirmatively when the prosecutor asked her if the victim's brother told her that "Larry" came into the room and got the victim. Later, in cross-examining the investigating police officer, defense counsel asked about what information the victim's brother provided, and the officer responded that the victim's brother told him that "Larry" had come into his room, taken the victim out of the bed, and carried her out of the room with his hand over her mouth. Upon further cross-examination, the officer agreed that he did not ask the victim's brother how he knew "Larry" and that he did not ask the victim's brother to describe "Larry's" physical characteristics.

"The decision of whether to interpose certain objections is a matter of trial strategy and tactics," and "tactical errors do not constitute denial of effective assistance of counsel." (Citations, punctuation and footnotes omitted.) *Abernathy v. State*, 299 Ga. App. 897, 903 (3) (a) (685 SE2d 734) (2009). When asked at the motion for new trial hearing why he elicited and allowed introduction of the victim's brother's statements, defense counsel responded that "the reason I brought it up was just to show that the brother did not know Larry McCowan beforehand, before the incident and to show that the officer didn't ask the child to describe Larry McCowan." Consistent with such testimony, the record demonstrates that McCowan's counsel pursued a strategy at trial of trying to show that neither the victim nor her brother knew McCowan prior to the offense and may have misidentified him as the perpetrator.[1] Under the circumstances, the trial court was authorized to conclude that defense counsel's failure to object to hearsay statements of the victim's brother was part of a reasonable trial strategy. *Boyt v. State*, 286 Ga. App. 460, 463-464 (2) (c) (649 SE2d 589) (2007) (trial court authorized to find that trial counsel's failure to object to hearsay statements was part of reasonable trial strategy to discredit victim's version of events).

For the reasons set forth above, we affirm the trial court's judgment.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 1, 2010.

*James D. Lamb*, for appellant.

---

[1] Defense counsel apparently intended to suggest that Dee Dee's boyfriend might have been the perpetrator.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.