## A10A0269. BOGGS v. THE STATE.
### (697 SE2d 843)

BERNES, Judge.

A jury convicted Kenneth Allen Boggs of robbery, and the trial court denied his amended motion for new trial. On appeal, Boggs contends that (1) there was insufficient evidence to support his conviction; (2) there was a fatal variance between the victim identified in the indictment and the victim identified at trial; (3) his constitutional right to confrontation was violated because the victim did not testify; (4) the prosecutor improperly cross-examined him concerning whether he had ever been arrested for unrelated offenses or dishonorably discharged from the military; and (5) his trial counsel rendered ineffective assistance. For the following reasons, we affirm.

1. Following a criminal conviction, the defendant is no longer presumed innocent, and we construe the evidence in the light most favorable to the jury's verdict. *Gordon v. State*, 294 Ga. App. 908 (1) (670 SE2d 533) (2008).

> This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.

(Citations and punctuation omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Viewed in this manner, the evidence showed that in the early morning hours of September 1, 2007, two officers with the Savannah-Chatham Metro Police Department were riding on patrol in downtown Savannah. They observed two young males running

across the street away from a man in "a crumbled heap" on the sidewalk with his hands over his face. The man on the sidewalk had a deep laceration above his right eye and "his face was pretty much swollen." The two males running away from the injured man were later identified as Rico Sanchez and Kenneth Boggs.

The officer driving the patrol car activated the blue lights and accelerated toward Sanchez and Boggs in an effort to overtake them. Both of them continued running and did not stop in response to the pursuing patrol car. The officers observed that Boggs was carrying a backpack as he ran. When the patrol car came up behind Sanchez and Boggs, the officers saw Boggs drop a backpack as he continued running. After maneuvering the patrol car in front of Sanchez and Boggs, the first officer turned the car at an angle to cut them off, and the second officer immediately exited the car and ordered them to stop. Boggs complied and was handcuffed. Sanchez, however, fled from the scene and avoided apprehension at that time.

The officers retrieved the backpack that Boggs had dropped. The backpack belonged to the injured man on the sidewalk. Boggs was transported to police headquarters, where he agreed to speak with a detective without a lawyer present after being advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Although Boggs was under the influence of alcohol, he was coherent and able to answer the questions posed to him by the detective.

During the videotaped interview, Boggs told the detective that he had been out drinking all evening with Sanchez, whom he allegedly had met for the first time that day. According to Boggs, Sanchez "became violent with somebody else" earlier that evening after he became intoxicated. Boggs stated that he was walking down the street with Sanchez later that night when they came upon the man on the sidewalk. As related by Boggs, Sanchez then said "f**k the homeless guy," ran up to the man on the sidewalk, and began striking the man repeatedly on the face while Boggs stood nearby in shock at what was happening. According to Boggs, Sanchez grabbed the backpack from the homeless man and took off running from the scene, and Boggs followed. Boggs stated that upon seeing the police car, he screamed for Sanchez to stop, but Sanchez kept running and threw the backpack to him. Boggs asserted that he dropped the backpack as soon as Sanchez threw it to him, and that he immediately stopped and put his hands in the air in response to the pursuing police car.

Sanchez was later apprehended, and Sanchez and Boggs were jointly indicted for robbery. Boggs was tried separately from

Sanchez. While the homeless victim did not testify at Boggs's trial,[1] the patrol officers and interviewing detective testified to the events as set out above, and the videotaped police interview of Boggs was played for the jury. Another acquaintance who had been drinking with Sanchez and Boggs that night testified that earlier in the evening, Sanchez had been acting "in a very aggressive manner towards others," had taken the lid off of a manhole on the sidewalk and then walked away, and had repeatedly spent time hitting a punching bag machine at one of the bars where they were drinking. According to the acquaintance, Sanchez's behavior was a "big red flag," and he had chosen to part company with Sanchez and Boggs at that point.

Boggs took the stand and maintained that he was an innocent bystander rather than a party to the robbery. In contrast to his videotaped interview, Boggs claimed for the first time that he had attempted to pull Sanchez off the homeless victim in order to stop the attack.

After hearing all of the testimony, the jury found Boggs guilty of the charged offense. The trial court denied his motion for a new trial as amended, leading to this appeal.

Boggs argues that there was insufficient evidence to demonstrate that he was a party to the robbery of the homeless victim rather than merely present at the scene of the crime. See generally *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997) ("Mere presence at the scene is not sufficient to convict one of being a party to a crime[.]"). We disagree.

"A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another ... [b]y use of force." OCGA § 16-8-40 (a) (1).

> Even if a person does not directly commit the crime, a
> person who intentionally aids or abets in the commission of
> a crime or intentionally advises, encourages, hires, counsels
> or procures another to commit the crime may be convicted
> of the crime as a party to the crime.

(Citation and punctuation omitted.) *Green v. State*, 298 Ga. App. 17, 20 (1) (679 SE2d 348) (2009). See OCGA § 16-2-20 (b) (3), (4). "Whether a person is a party to a crime may be inferred from that

---

[1] An alleged victim's testimony is not necessary to convict a defendant where there is other testimony showing that the defendant committed acts which establish the elements of the charged offense. See *Williams v. State*, 275 Ga. App. 491, 493 (621 SE2d 512) (2005); *Mullins v. State*, 267 Ga. App. 393, 395 (1) (a) (599 SE2d 340) (2004); *Cockrell v. State*, 248 Ga. App. 359, 361 (1) (a) (545 SE2d 600) (2001).

person's presence, companionship, and conduct before, during and after the crime." (Footnote omitted.) *Marshall v. State*, 275 Ga. 740, 742 (4) (571 SE2d 761) (2002). The question of whether a person was a party to the charged crime is normally for the jury. *Burks*, 268 Ga. at 505.

Based upon the evidence presented at trial, a rational trier of fact was authorized to find Boggs guilty beyond a reasonable doubt of being a party to the crime of robbery. *Jackson*, 443 U. S. 307. OCGA §§ 16-2-20 (b) (3), (4); 16-8-40 (a) (1). Boggs's admission that he was present at the scene of the robbery, in conjunction with his possession of the recently stolen backpack, which the jury could find was unsatisfactorily explained by Boggs, was sufficient to support his robbery conviction. See *Thomas v. State*, 256 Ga. App. 712, 713-714 (1) (569 SE2d 620) (2002) ("Once it is shown that goods were stolen in a robbery, absence of or unsatisfactory explanation of the possession of the goods will support a conviction for robbery based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the jury[.]") (citation and footnote omitted). See also *In the Interest of T. T.*, 282 Ga. App. 527, 528-529 (639 SE2d 538) (2006); *Williams v. State*, 205 Ga. App. 397 (1) (422 SE2d 438) (1992). Boggs's continued involvement with Sanchez, despite observing his aggressive and reckless behavior during the course of the night, further created an inference that Boggs intended to participate in the robbery. See *Hawkins v. State*, 292 Ga. App. 76, 78 (663 SE2d 406) (2008); *In the Interest of C. L.*, 289 Ga. App. 377, 380 (1) (b) (657 SE2d 301) (2008). Additionally, Boggs's flight from the crime scene and from the pursuing patrol car, and his effort to discard the stolen property during the police pursuit, served as circumstantial evidence of his guilty intent. See *Collins v. State*, 283 Ga. App. 188, 191 (1) (a) (641 SE2d 208) (2007); *Dennard v. State*, 241 Ga. App. 794, 796 (527 SE2d 884) (2000). This combined circumstantial evidence was sufficient to support Boggs's robbery conviction.

Boggs argues, however, that the state failed to exclude every reasonable hypothesis except that of his guilt as required by OCGA § 24-4-6.[2]

> To support a verdict, circumstantial evidence need exclude only reasonable hypotheses, not exclude every inference or hypothesis except that of the defendant's guilt. . . . It is only

---

[2] OCGA § 24-4-6 provides:
To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.

when the evidence is insupportable as a matter of law that the jury's verdict may be disturbed, even where the evidence is entirely circumstantial.

(Footnote omitted.) *Buruca v. State*, 278 Ga. App. 650, 652-653 (1) (629 SE2d 438) (2006). See *Gresham v. State*, 246 Ga. App. 705, 707 (2) (541 SE2d 679) (2000) ("[W]e have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors.") (footnote omitted). Boggs contends that his videotaped police interview and his trial testimony created a reasonable hypothesis of innocence, but, as noted above, his interview and trial testimony were not consistent with one another in all material respects. His statements also were inconsistent with the testimony of the pursuing patrol officers. In this regard, Boggs testified that he immediately dropped the backpack after Sanchez threw it to him and immediately stopped in response to the pursuing patrol car. There was officer testimony, however, that Boggs was running with the backpack, did not throw it down until the police car passed by him, and did not stop running in response to the pursuing patrol car until it cut him off. Additionally, the jury was instructed on the relevant legal principles at stake, including circumstantial evidence, mere presence at the scene of a crime, and mere association with others committing a crime. Under these circumstances, the jury was entitled to reject Boggs's version of events and convict him of robbery. See *Olds v. State*, 293 Ga. App. 884, 887-888 (1) (668 SE2d 485) (2008); *Buruca*, 278 Ga. App. at 652-653 (1).

Contrary to Boggs's contention, the present case is not controlled by *Shearin v. State*, 293 Ga. App. 794, 795-798 (1) (668 SE2d 300) (2008). In *Shearin*, a jail guard was attacked by several inmates but was only able to identify one of his attackers. Id. at 797 (1). The state argued that the defendant inmates were the other participants in the attack, based solely upon circumstantial evidence that they had escaped from the jail at the time of the attack. Id. We reversed the defendants' convictions, holding that the circumstantial evidence failed to exclude the reasonable hypothesis that the defendants "merely seized the opportunity to flee from the jail" at the time of the attack. Id. In contrast, in the present case, there was other evidence linking Boggs to the attack and robbery of the homeless victim other than flight from the police, including his presence at the scene of the crime, his possession of the recently stolen backpack, and his attempt to discard the backpack as he fled.

2. Boggs next asserts that a fatal variance existed between the victim identified in the indictment and the victim identified at trial. We are unpersuaded.

A variance between the victim's name as alleged in the indictment and as proven at trial is not fatal, where the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that the victim identified in the indictment was the same as the victim identified at trial. See *Harris v. State*, 197 Ga. App. 695, 695-696 (1) (399 SE2d 284) (1990). See also *Montfort v. State*, 281 Ga. App. 29, 30-31 (2) (635 SE2d 336) (2006). Indeed, our Supreme Court has held that "the identity of the person alleged to have been robbed is not an essential element of the crime." *McKisic v. State*, 238 Ga. 644, 646 (2) (234 SE2d 908) (1977).

The indictment averred that Sanchez and Boggs committed robbery in that "in the County of Chatham and State of Georgia, did, on or about September 1, 2007, with intent to commit theft, take Steven Bonngardar's backpack by force." While the state did not present any witnesses who referred to the victim by first and last name, the state did present testimony reflecting that a man had his backpack taken by force on September 1, 2007, in Chatham County, Georgia, by Sanchez and Boggs. Moreover, Boggs referred to the victim by last name during the course of his own testimony. Because the testimony showed that the victim referred to at trial was the same victim identified in the indictment, no fatal variance existed in this case. See *Montfort*, 281 Ga. App. at 30-31 (2); *Parks v. State*, 246 Ga. App. 888, 889 (1) (543 SE2d 39) (2000); *Harris*, 197 Ga. App. at 696.

3. Boggs also claims that his constitutional right to confrontation was violated because the state failed to call the victim as a witness at trial. Again, we disagree. A defendant's right to confrontation is not implicated unless the jury hears an out-of-court statement of an unavailable declarant that was testimonial in nature and was introduced to prove the truth of the matter asserted. See *Crawford v. Washington*, 541 U. S. 36, 59 (IV), n. 9, 68 (V) (c) (124 SC 1354, 158 LE2d 177) (2004); *Little v. State*, 280 Ga. App. 60, 63-64 (2) (633 SE2d 403) (2006). But in the present case, the jury never heard any out-of-court statements of the victim, and so Boggs's enumeration of error is without merit.

4. Boggs contends that the prosecutor improperly cross-examined him about whether he had been previously arrested for driving under the influence ("DUI") or had been dishonorably discharged from the military. The issue has been waived, however, because Boggs failed to object to the questions posed by the prosecutor during the trial. See *Hight v. State*, 293 Ga. App. 254, 258 (4) (666 SE2d 678) (2008).

5. Boggs maintains that his trial counsel rendered ineffective assistance in several respects. To prevail on his ineffective assistance claim, Boggs must show that his trial counsel's performance was

deficient and that the deficient performance so prejudiced him that there is a reasonable probability that, but for that deficiency, the outcome of the trial would have been different. *McCowan v. State*, 302 Ga. App. 555, 557 (2) (691 SE2d 360) (2010). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). We need not address both the deficient performance and prejudice prongs of the test if the showing on one prong is insufficient. *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997). "In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo." (Footnote omitted.) *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004).

(a) Boggs first argues that his trial counsel performed ineffectively by failing to object or move for a mistrial after the prosecutor cross-examined him about whether he had been previously arrested for DUI or had been dishonorably discharged from the military. We conclude that trial counsel's decision not to object or move for a mistrial was a reasonable trial strategy.

On cross-examination, the prosecutor asked Boggs if he had ever been arrested for DUI, and Boggs responded, "No, ma'am, and you've already ran my record and you can tell that it didn't happen." The prosecutor then questioned Boggs regarding his discharge from the military, and Boggs adamantly denied that he was dishonorably discharged, reiterated that there was "nothing on [his] record," and challenged the prosecutor to name any alleged acts of wrongdoing that he had committed in the military. The prosecutor then ceased her cross-examination and did not introduce any evidence of prior arrests or of a dishonorable discharge at any remaining point during the trial.

While Boggs's trial counsel did not initially object or move for a mistrial in response to the prosecutor's questions, he did address the prosecutor's questions during closing argument. Trial counsel emphasized at several points in his closing argument that the state never presented any evidence that Boggs had any prior arrests or was dishonorably discharged, and repeatedly maintained that Boggs had a clean criminal record and military history.

It is apparent from the record that defense counsel made the strategic decision to wait until closing argument to respond to the prosecutor's questions. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). Trial counsel's strategic decision was

not patently unreasonable, and thus Boggs cannot establish the deficiency prong of his ineffective assistance claim. See id. (trial counsel's decision to wait and respond to a witness's testimony during closing argument, rather than object at the time of the testimony, fell within the range of reasonable trial strategy).

(b) Boggs next argues that his trial counsel performed ineffectively by failing to request a continuance or challenge the admission of his videotaped police interview, when the prosecutor did not produce the videotape to the defense until the day of trial. We disagree.

The record reflects that Boggs's trial counsel did in fact request a continuance based upon the tardy production of the videotape to the defense. The trial court granted the request in order to give trial counsel an opportunity to review the videotape. After trial counsel reviewed the videotape, the trial court proceeded forward with the trial without any further objection from Boggs's trial counsel. At the hearing on Boggs's motion for new trial, trial counsel testified that there was no material difference between the videotaped interview and a written summary produced to him by the state prior to trial, and that he had felt prepared for trial after having an opportunity to review the videotape.

To prove deficient performance by his trial counsel, "[Boggs] must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." (Citation and punctuation omitted.) *Shaw v. State*, 286 Ga. 229, 231 (2) (686 SE2d 760) (2009). Given that trial counsel requested and received a continuance, and thus secured an opportunity to review the videotape prior to trial, Boggs cannot show that his counsel's performance fell outside the wide range of reasonable professional conduct.

(c) Boggs also argues that his trial counsel performed ineffectively by failing to challenge the admission of his videotaped police interview on the ground that his rights under the Fifth Amendment and *Miranda*, 384 U. S. 436, had been violated. In this respect, Boggs notes that at trial, he testified that before the detective interviewed him, he had requested to speak with an attorney but had been ignored. He further notes that there was testimony that he was intoxicated at the time of the interview. Accordingly, Boggs contends that his trial counsel should have argued that the videotape was inadmissible in light of his unheeded request for an attorney and his intoxication. We are unpersuaded.

At the hearing on Boggs's motion for new trial, trial counsel testified that his decision to forego challenging the admission of the videotape was made after reviewing the videotape and consulting

with Boggs. Trial counsel further testified that he had discussed the case with Boggs on several occasions before trial, but that the first time he ever heard that Boggs had requested an attorney was when Boggs testified at trial.

Trial counsel's performance was not deficient under these circumstances. As to the issue of Boggs's alleged request for an attorney, the videotape itself shows Boggs waiving his *Miranda* rights and consenting to speak with the detective without an attorney present, and at no point in the videotape does Boggs request an attorney. Furthermore, trial counsel was not required to anticipate that Boggs would take the stand and claim for the first time that he had requested an attorney before speaking to the detective. See *Martinez v. State*, 303 Ga. App. 166, 175 (4) (c) (692 SE2d 766) (2010) ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.") (citations omitted). Hence, trial counsel was not deficient in failing to challenge the admission of the videotape interview on the ground that Boggs had requested an attorney.

As to the issue of Boggs's intoxication during the police interview,

> intoxication, standing alone, does not render a statement inadmissible. If the evidence is sufficient to establish that the defendant's statement was the product of rational intellect and free will, it may be admitted even if the defendant was intoxicated when he made the statement.

(Citation, punctuation and footnote omitted.) *Forehand v. State*, 271 Ga. App. 746, 747 (611 SE2d 78) (2005). The detective testified at trial that Boggs appeared intoxicated, but not to the point that he was unable to comprehend the questions posed to him and respond accordingly. Moreover, the videotape clearly shows that Boggs was coherent and responsive during the course of the interview. Consequently, trial counsel was not deficient in declining to challenge the admission of the videotape interview on the ground that Boggs was intoxicated. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citation and punctuation omitted).

(d) Boggs further argues that his trial counsel performed ineffectively by failing to object to certain assertions made by the prosecutor during her opening statement. According to Boggs, those assertions were improper and subject to an objection because the

prosecutor lacked a good faith belief that evidence would be presented at trial to corroborate the assertions. See *Hartry v. State*, 270 Ga. 596, 598 (2) (512 SE2d 251) (1999) (a prosecutor's opening statement must be restricted to what he or she has a good faith belief will be proven at trial). We do not agree.

In *Peterson v. State*, 282 Ga. 286, 290-292 (4) (a), (b) (647 SE2d 592) (2007), our Supreme Court held that the defendant had failed to prove that his trial counsel was ineffective for failing to object to the prosecutor's opening statement, given that the defendant failed to show that the prosecutor was not exercising good faith, and given that the trial court instructed the jury that opening statements are not evidence.

The present case is controlled by *Peterson*. Boggs did not cross-examine the prosecutor at the hearing on his motion for a new trial or otherwise present any evidence reflecting on what the prosecutor anticipated the evidence would show prior to trial. As such, he cannot establish that the prosecutor lacked a good faith basis for her assertions made during her opening statement. Additionally, the trial court specifically instructed the jury that opening statements are not to be considered as evidence. Thus, Boggs cannot succeed on his ineffective assistance claim predicated upon the prosecutor's opening statement. See id. See also *Wilcox v. State*, 297 Ga. App. 201, 205 (2) (677 SE2d 142) (2009).

(e) Lastly, Boggs argues that his trial counsel performed ineffectively by failing to investigate and learn prior to trial that the homeless victim would not be called by the state to testify. Boggs, however, has failed to show how this alleged deficiency by trial counsel prejudiced him in any way. To the extent that Boggs is claiming that the defense would have secured the presence of the victim to testify if a proper pretrial investigation had been performed, he failed to proffer the testimony of the victim at the new trial hearing in order to show how it would have been favorable to him. It follows that Boggs cannot prove that the alleged failure to investigate so prejudiced him that there is a reasonable likelihood that, but for that deficiency, the outcome of the trial would have been different. See *Middlebrooks v. State*, 289 Ga. App. 91, 94 (3) (b) (656 SE2d 224) (2008); *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991).

*Judgment affirmed. Barnes, P. J., and Blackburn, J., concur.*

DECIDED JUNE 30, 2010.

*Jennifer R. Burns*, for appellant.

*Larry Chisolm, District Attorney, Melanie Higgins, Assistant District Attorney*, for appellee.